Henry KAMINSKI

v.

A/B SVENSKA OSTASIATISKA KOM-PANIET, Appellant,
and Dan-Axel Brostrom

v.

ATLANTIC & GULF STEVEDORES INC., Third-Party Defendant.

No. 18457.

United States Court of Appeals, Third Circuit.

Argued June 11, 1971.

Decided July 14, 1971.

E. Alfred Smith, Krusen, Evans & Byrne, Philadelphia, Pa., (Timothy J. Mahoney, John C. Detweiler, Philadelphia, Pa., on the brief), for appellant.

John P. Penders, Marshall, Dennehey & Warner, Philadelphia, Pa., (Gerald A. Dennehey, Philadelphia, Pa., on the brief), for appellee, Atlantic & Gulf Stevedores, Inc. third party defendant.

Before STALEY and ADAMS, Circuit Judges, and GARTH, District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In this maritime suit a shipowner seeks indemnity from a stevedoring contractor for damages the shipowner paid to a longshoreman injured when equipment provided by the shipowner failed while being operated by the stevedoring contractor. The appeal has been dismissed by stipulation as to the longshoreman, Kaminski, and the only matter in contention is the trial judge's instructions with respect to the findings necessary to support a verdict of indemnity.

Kaminski was a member of a longshoring gang, employed by Atlantic Gulf Stevedores, Inc. [Stevedore] which was unloading the SS BALI, owned by A/B Svenska Ostasiatiska Kompaniet [shipowner], on February 25, 1965. The gang began its work in the morning by "rigging" the hatch from which the cargo would be extracted. This entailed positioning and setting up two booms. The midship boom already extended over the hatch opening. Because it was properly positioned, the only rigging required was the installation of a preventer wire to immobilize it. The landing fall boom, extending over the pier, had to be lowered and repositioned. As a result, its preventer wire could not be directly fastened to the deck, and the longshoremen ran it through a hawser hole in the bulwark. Then, the strain on both booms was equalized. After the rigging was completed, the stevedore's foreman inspected and approved it.

The remainder of the morning was spent unloading general cargo. After lunch, the gang, under the supervision of one of the ship's officers, began to discharge three-quarter ton coils of banded wire from the wings of the hold. In order to do this, it was necessary first to drag the bundle of wire being unloaded over the bundles beneath it until the bundle being extracted reached the hatch opening. Then a bridle was attached and the bundle was lifted out of the ship.

About a half an hour after this operation began, while one of the bundles was being dragged, the landing fall boom preventer wire snapped, whipped on to the pier, and struck and injured Kaminski. The eyewitnesses testified that the bundle was being freely dragged, and that it did not catch or snag on anything. The manila rope being used to drag the bundle remained intact. After the accident, the boom was re-rigged in the same manner, and the rest of the cargo was unloaded without incident.

Kaminski filed an action against the shipowner in the District Court for the Eastern District of Pennsylvania, and the shipowner brought the stevedore in as a third-party defendant. The liability issues were severed from the issue of damages, and the shipowner conceded its liability to Kaminski. Following a verdict in favor of the stevedore against the shipowner, the jury heard evidence on the issue of damages and awarded Kaminski $150,000.

The evidence at the trial was conflicting. Experts testified that the preventer wire, although corroded, was several times stronger than the load it was expected to bear, and that the winches were improperly operated because there was but one operator and the controls were placed so that he could not coordinate both winches. Other experts testified that the winches were properly manned, and that the wire parted be-

cause it was badly corroded. The stevedore's expert stated the defect in the wire was inherent and not visually detectable.

The appellant shipowner contends that the instructions to the jury were incorrect because the court told the jury that they must find that the stevedore's negligence caused the accident in order to award indemnity to the shipowner,[1] and failed to charge, as specifically requested, that the jury could find for the shipowner if they found both parties at fault and that the stevedore's fault was a substantial factor in causing the accident.[2] The appellee's position is that the shipowner is not entitled to a new trial since the charge as a whole, read in light of the evidence, adequately informed the jury of the obligations of the stevedore and that indemnity would be due if the stevedore's share of the fault was a substantial factor in the accident.

The law with regard to indemnity for breach of the stevedore's warranty of workmanlike service has gone through an evolutionary process in the last fifteen years. The landmark case setting forth this theory of recovery is Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133 (1956). There, the Supreme Court held that the indemnity could be based soley upon the stevedore's contractual obligation to the shipowner.[3] The Court in *Ryan* emphasized that "competency and safety" were "inescapable elements" of the service, and were the "essence" of the contract. *Id.* at 133, 76 S. Ct. 232. The Court further held that "[w]hatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman * * * it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense."[4]

This doctrine was expanded and clarified in Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958). There, a longshoreman was injured when he was struck by a board which fell from a shelter erected by the stevedore when the ship was in another port.[5] Initially, the Court noted that the stevedore's "contractual obligation to perform its duties with reasonable safety related not only to the handling of cargo, as in *Ryan*, but also to the use of equipment incidental thereto. * * *"[6] It then held that because the duties owed to the shipowner by the stevedore were different than those owed to the longshoreman by the shipowner, the verdict for

---

1. Relevant portions of the Charge of the Court are set forth in the appendix.

2. The appellant's attorney took proper exceptions both to the disputed portions of the charge and the requests which were denied.

3. In *Ryan*, the stevedore had loaded the cargo under the supervision of an officer of the ship. When the cargo was being unloaded part of it shifted, injuring a longshoreman employed by the stevedore. The longshoreman recovered from the shipowner under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. The Court first held that the act did not bar indemnity, since that recovery over was grounded upon contractual obligations. 350 U.S. at 128–132, 76 S.Ct. 232. The other issue decided by the Court was "whether, in the absence of an express agreement of indemnity, a stevedoring contractor is obligated to reimburse a shipowner for damages caused it by the contractor's improper stowage of cargo." *Id.* at 132, 76 S.Ct. at 236.

4. 350 U.S. at 134–135, 76 S.Ct. at 238.

5. In the action between the longshoreman and Weyerhaeuser, the jury found that the vessel had been seaworthy, but that Weyerhaeuser had been negligent. The trial court then dismissed the third-party action, and this dismissal was affirmed by the Court of Appeals. *See* 355 U.S. at 564–565, 78 S.Ct. 438.

6. 355 U.S. at 567, 78 S.Ct. at 411. Indemnity was conditioned on the absence of conduct on the part of the shipowner sufficient to preclude recovery.

the longshoreman "did not *ipso facto* preclude recovery of indemnity. * * * " [7]

Crumady v. The Joachim Hendrik Fisser [8] was the next case in which the Supreme Court analyzed the relations between the shipowner and stevedore. There, a longshoreman was injured when the top of a boom being used to unload cargo from the ship fell into the hold. The district court held the shipowner liable to the longshoreman on the basis of unseaworthiness because a winch was improperly adjusted.[9] However, it ordered indemnity from the stevedore to the shipowner on the ground that the act of the stevedore in repositioning the boom precipitated the unseaworthy condition of the ship.[10] In support of the district court's judgment in favor of the longshoreman, the Supreme Court held that the shipowner has an undelegable duty to protect against unseaworthiness, and this duty imposes a continuing responsibility to keep auxiliary equipment in safe operating condition.[11] Next, the Supreme Court decided that the shipowner could recover indemnity under the stevedore's warranty of workmanlike service, even though the shipowner, who had chartered the vessel, was not a party to the stevedoring contract.[12] Ultimately, the Supreme Court held that the negligence of the stevedore which brought into play the unsafe condition amounted to a breach of that warranty.[13]

The latest Supreme Court exposition on this topic is Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., Inc.[14] The issue before the Court there was whether a stevedore who has non-negligently supplied defective equipment has breached its warranty of workmanlike service. The analysis began by reiterating the language of *Ryan* and its progeny that negligence is not the important factor in determining whether the stevedore is responsible to the shipowner, and that neither the "reasonable man test" [15] nor foreseeability are the appropriate standards.[16] The Court

7. *Id.*, at 568, 78 S.Ct. at 411.

8. 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1958).

9. Although the rigging could only support a load of 3,000 pounds, the winch was set so that it would not shut itself off automatically until the load reached 6,000 pounds.

10. The Court of Appeals reversed, and placed the responsibility for the accident solely on the stevedore. 249 F.2d 818 (3rd Cir.), rehearing denied, 249 F.2d 821 (1957).

11. The Court equated this case to one where cargo was being handled with a cable or rope of insufficient strength. 358 U.S. at 427–428, 79 S.Ct. 445.

12. Justice Harlan, writing in dissent for himself and Justices Frankfurter and Whittaker emphasized that the Supreme Court's holding meant that indemnity could be had although the unseaworthy condition was not created by the stevedore. *Id.*, at 432–433, 79 S.Ct. 445.

13. The district court had expressly found that the stevedore was negligent. 142 F.Supp. 389, 401 (1956). Therefore, it was not necessary for the Supreme Court to speak in terms of a more abstract higher standard of care.

14. 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). The cause of action in that case arose when a rope supplied by the stevedore and attached to a hatch tent snapped. The injured longshoreman recovered from the shipowner in state court, whereupon the shipowner sued for indemnity in a Federal District Court. Recovery over was denied, and the Ninth Circuit affirmed on the ground that the warranty is not breached in the absence of a showing of negligence on the part of the stevedore. 310 F.2d 481 (1962).

15. 376 U.S. at 321, 323–324, 84 S.Ct. 748.

16. "[H]owever, the issue of breach of the undertaking does not turn on whether the contractor knew or should have known that his equipment was safe, but on whether the equipment was in fact safe and fit for its intended use." *Id.*, at 321–322, 84 S.Ct. at 752.

placed the responsibility for the accident on the party best able to avoid it.[17] Critical factors to the determination of avoidability were reliance of the shipowner on the competency of the stevedore and control and supervision of the equipment, which might well provide the stevedore with knowledge of the history of prior use and the opportunity to test for latent defects.

We are not unfamiliar with the development of this branch of maritime law. Indeed, we faced the identical issues in a strikingly similar factual setting in Dziedzina v. Dolphin Tanker Corp.[18] There, a shipcleaner was sued for indemnification for damages recovered by an injured worker. The workman was cleaning a poorly lighted ballast tank from a precarious position when the pressure in the hose he was holding surged.[19] He lost his balance, released the hose, and was injured before the water could be shut off. The workman's supervisor and a ship's officer were both aware of the conditions under which the task was to be performed, but still ordered that it be accomplished. The trial judge denied certain points for charge dealing with the shipcleaner's responsibility,[20] and the jury found for the plaintiff-longshoreman and the ship-cleaner. In granting a new trial, we carefully explicated:

" * * * The court also had the duty to explain to the jury that even if the stevedore acts in a nonnegligent manner, his warranty of workmanlike service is breached where such actions made the unseaworthiness of the vessel operative. These principles of Maritime Law are unique and distinct from the Common Law standards and for this reason, the District Court must be explicit. * * * " 361 F.2d at 123.

The charge that was actually given in Dziedzina, read in its entirety, allowed the jury to find either but not both of the parties liable. This was held to be prejudicial error because the jury should have been given the opportunity to decide whether the default of the shipcleaner "was a contributory cause of this accident." [21] Our Court concluded that the requested instructions correctly stated the law and should not have been denied.

These same principles are completely applicable in this case. The shipowner admitted that its vessel was unseaworthy because the preventer wire was not fit for the purpose for which it was to be used. However, the shipowner con-

---

17. Id., at 323, 324, 84 S.Ct. 748.

18. 361 F.2d 120 (3rd Cir. 1966).

19. The hose was part of the ship's fire-fighting equipment.

20. Counsel for the shipowner in the present case used as a basis for his requests for charge the same instructions requested and denied in Dziedzina. They are as follows:

"If you find from the evidence that the services of [the shipcleaner] were not performed in a careful and workmanlike manner and the failure to do so substantially contributed to the injury of the Plaintiff, then your verdict should be in favor of the Defendant herein [shipowner] and against [shipcleaner] in the third party action for all that the Plaintiff was awarded at your hands. Even though you find as a matter of fact that the fault on the part of the shipowner may have contributed to the injury in suit, it does not mitigate its claim over. It may recover in full on the warranty of workmanlike service. * * *

"If you do find from the evidence that there was an unseaworthy condition of the vessel and that the ship-cleaner, * * * by its negligence 'brought that condition into play,' then the ship cleaner has breached its duty to perform in a safe and proper manner and is liable over [to] the shipowner * * *

"If you find that an unsafe condition existed and the ship cleaner-employer, * * * by its foreman or workmen knew of it, and continued its men working there in the forepeak ballast tank and that condition was a substantial factor in causing the injury, the shipowner * * * is entitled to recover in its action over against the * * * [shipcleaner] all that the Plaintiff is awarded at your hands. * * * " 361 F.2d at 122, n. 2.

21. 361 F.2d at 123.

tends that it was prejudiced in its claim for indemnity because the Court's charge, taken as a whole effectively precluded the examination of the testimony in terms of the governing precepts in this area of maritime law.

■ It is clear that the charge here was couched in terms of negligence concepts, complete with reference to the standards of foreseeability and prudence. The gravamen of the third-party complaint, however, is not that the stevedore was negligent, but that the stevedore breached its contract to perform in a workmanlike manner by failing to unload the ship safely and competently. There is no doubt but that negligence might well be a breach of that contract, but the stevedore did more than warrant against mere negligence. The evidence in this case was extremely close, and the shipowner was entitled to have it evaluated, not in accordance with the duties imposed by ordinary tort law, but in accordance with the obligations set forth by maritime law.

■ Similarly, the shipowner was entitled to correct instructions to cover the case of mutually shared fault. When injury occurs because of defective equipment, the stevedore is not entitled to set up the shipowner's negligence as a defense.[22] Therefore, the crucial inquiry is not whether the equipment was provided by one or the other, but rather whether the conduct of the stevedore "brought the unseaworthiness of the vessel into play"?[23]

■ There was evidence here that the wire, although weakened by corrosion, was strong enough to withstand the stresses of the unloading operation. Testimony was also adduced that the stevedore provided only one longshoreman to operate two winches simultaneously, even though the controls were more than five feet apart. Were the jury properly instructed, it would not have been unreasonable for them to have drawn the inference that the pre-existing condition of unseaworthiness of the wire was activated by the improper operation of the winches. They might then have concluded that this conduct was indeed unworkmanlike and a substantial factor in the causation of the accident, thereby entitling the shipowner to indemnification from the stevedore. However, what occurred was that the jury was denied this option because the trial judge refused to charge them in accordance with guidelines previously established by this Court.

For the above reasons, a new trial limited to the indemnity issue will be granted.

### APPENDIX

The District Court instructed the jury, in part, as follows:

" * * * The shipowner in effect says, 'Yes, this preventer wire was defective, but it wasn't our fault that this accident happened.'

Now, the burden of proof is on him to show you by the fair weight of the testimony, the preponderance of the evidence, that his position is the correct one. In other words, he must convince you members of the jury that this accident did not happen because of the defective wire but because of something that the stevedore did.

\* \* \* \* \* \*

When the stevedores go on board, they go on board that ship, and of course the owner, the company is responsible for the acts of his agents. What did they do that might have caused this accident,

22. See *Ryan, supra,* 350 U.S. at 134–135, 76 S.Ct. 232. We do not mean to imply, however, that custody of the equipment is never relevant. It can be vitally important where the stevedore is the supplier. See *Italia Societa, supra,* 376 U.S. at 323–324, 84 S.Ct. 748. And where the shipowner supplies the equipment in question, the element of custody is certainly relevant to the determination whether the stevedore performed in a workmanlike manner.

23. See *Crumady, supra,* 358 U.S. at 429, 79 S.Ct. at 448.

other than what already appears, the defective gear, the defective preventer wire?

Members of the jury, in the first instance the stevedoring company and its agents and workman are responsible in this case if they were negligent. Now, negligence means this: Did they act under all of the circumstances as a prudent person would act? Did they go aboard that ship and do their work as you or I would, any ordinarily prudent person in the conduct of his own affairs, or, on the contrary, did they do something which we would not do? Did they exercise ordinary care under all the circumstances?

To simplify it, did these stevedores * * * do anything negligent which created this accident? Now, if they didn't, members of the jury, they are not liable in this case. * * * [T]he point is primarily were they negligent? Was there some condition on board that ship of which they should have been aware?

* * * * * *

[B]asically I will tell you precisely what the duty of the stevedore is. Basically, members of the jury, it is a matter of negligence, and in order to find this stevedoring company liable you would have to find that they were negligent in the performance of their duties. I have told you what negligence is.

Did they exercise ordinary care? Did they operate this unloading operation under conditions which they knew or should have foreseen were dangerous and would in effect cause injury not only to Mr. Kaminski but anyone else?

* * * * * *

Now, if the accident happened because the stevedoring company was negligent in what they did, then they are liable, there is no question about it. On the other hand, if the accident happened because of the fact that there was a defective preventer wire and because of that fact the stevedoring company was not negligent, then they are not liable.

* * * * * *

It has been admitted as a matter of fact that the preventer wire was defective and that the ship was unseaworthy for that reason. That in itself creates liability. However, the shipowner takes the position that notwithstanding that, the stevedore warranted workmanlike service and that by their failure to do so they should be liable in this case, so that you must approach your decision considering whether or not the stevedore was negligent and whether that negligence brought into play the accident which caused injury to this plaintiff. If you find they were not negligent and that they did not breach their duty to perform their work in a safe and proper manner, having in mind what I have told you about negligence, then you should not hold them liable and should find in their favor in your verdict.

Now, there is a principle of law * * * that the stevedore does warrant that he will do his work in a safe and proper manner, and that is what brings negligence into play.

When you decide this case * * * you will have to determine whether they breached that duty through their negligence. If you conclude that the stevedoring company was not negligent, then your verdict should promptly be in their favor. On the other hand, if you find that although this ship was, as we say in the maritime law, unseaworthy because of this defective wire, even though that did exist, that this accident would not have happened except for their negligence, then you should promptly find in favor of the ship.

* * * * * *

I repeat again, the stevedores warrant and agree that they will work in a safe and workmanlike manner, and if they are negligent and don't perform their duties in that manner, then they could be liable. On the other hand, the ship has already stated that when it came into port and when these loading operations began there was a defective preventer wire and during the unloading operations the wire broke."