JERRY K. MALONE, Plaintiff-Appellee, *v.* A. L. MECHLING BARGE LINES, INC., Defendant-Appellant and Third-Party Plaintiff-Appellant and Cross-Appellee.—(BULK SERVICE CORPORATION, Third-Party Defendant-Appellee and Cross-Appellant.)

Fifth District   No. 77-320

Opinion filed August 30, 1978.

758

Bradley, McGovern, McMurray & Black, of Chicago (Michael A. Snyder, of counsel), for appellant A. L. Mechling Barge Lines, Inc.

Robert E. Ryan, of Alton, for appellee Bulk Service Corporation.

John T. Pierce, of Pratt, Pierce, Bradford & Gitchoff, Ltd., of East Alton, for appellee Jerry K. Malone.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Jerry K. Malone, brought suit against A. L. Mechling Barge Lines, Inc. (hereinafter "Mechling") under the general maritime law of the United States in the Circuit Court of Madison County to recover for personal injuries received when he fell into the hold of Barge JIH-87 owned by Mechling. He was employed by Bulk Service Corporation (hereinafter "Bulk"), a stevedore contractor, and was engaged as a "longshoreman" in unloading cargo from the barge at the time of his injury. He recovered a judgment after trial before the court, sitting without a jury, in the amount of $178,000.

In the same action, Mechling, as third-party plaintiff, recovered a judgment against Bulk for $22,048.00, the value of the barge, in partial indemnification for breach of the implied warranty of workmanlike service a stevedore owes a vessel owner under the general maritime law and attorney fees and expenses in the sum of $21,402.50.[1]

Mechling appeals arguing that it was entitled to complete indemnification in the sum of $178,000 and attorney fees. Bulk appeals arguing Mechling was not entitled to indemnification in any amount. Mechling appeals from the judgment in favor of Malone arguing its excessiveness and that the trial court failed to reduce the award in proportion to Malone's contributory negligence.

On October 26, 1970, Bulk was engaged as a stevedore in unloading bulk fertilizer from Barge JIH-87 at its dock located on the Chain-of-Rocks Canal at Granite City, Illinois. The facility consisted of a floating dock fitted with a crane equipped with a clam shell bucket, a hopper, conveyor and warehouse for storing the fertilizer. The dock was also equipped with a motorized capstan used to open and close hatch covers and to move barges alongside the dock.

The barge on which the accident occurred was 195 feet long, 35 feet wide and 11 feet deep from bottom to deck. It contained a single cargo

---

[1] We note the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act (18 Stat. 1263, 33 U.S.C. §905(b) (1975 Supp.)) which abolished the shipowner's duty to longshoremen to provide a seaworthy ship and the attendant right of the shipowner to recover for breach of the warranty of workmanlike service. See *Hurst v. Triad Shipping Co.*, 554 F.2d 1237 (3d Cir. 1977), a case applying the amended act to suits involving injuries to longshoremen.

compartment surrounded by a coaming elevated above the deck. Rails were fitted atop the port and starboard coamings and eight cargo or hatch covers fitted with wheels rode upon these rails. The covers were designed so that four covers, called "low covers" were narrower and lower than the other four covers, called "high covers." By this arrangement the covers could roll forward and aft under or over adjacent covers and access was provided to the cargo without the necessity of removing the covers from the barge. The covers when closed were fastened together by two types of locking devices, pins called "daggers" or "dogs" that fit into brackets on the coamings and "load binders," consisting of levers and chains in the approximate middle of both sides of the hatch covers.

On the day in question, Bulk's dock crew began discharging cargo from the forward end of the barge which had been moored starboard (right) side to the dock with the bow upstream. Cover number one at the bow was a high cover; covers two and three were low covers, four and five high covers, six and seven low covers and number eight a high cover. Five covers were opened and closed without incident. As cargo was discharged from the bow, the weight of the cargo caused the barge to "trim down" to stern.

The dock crew then attempted to move cover six forward and up the incline on the rails under cover five by using the power capstan. When they were unsuccessful, they forced cover six under cover five by placing the clamshell, loaded with several tons of fertilizer, against the center of cover six and exerting the force of its weight against the cover. Gene Morgan, dock supervisor for Bulk, testified that cover six would not slide on the rails; that the cover was rusty; that it appeared that it had scraped against the side of five cover; and that it had been damaged by some heavy weight dropped on it. Some "load binders" and "locking dogs" were missing. The damage did not appear of recent origin.

After the cargo was discharged from beneath six cover, an attempt was made by use of the power capstan to close six cover by disengaging it from under five cover. The attempt was unsuccessful. Plaintiff, Malone, terminal manager for Bulk, then came from the office onto the dock and undertook the supervision of the closing operation.

Malone climbed onto the top of cover five. He attached or had attached a cable from the clamshell bucket onto an angle iron on cover six, actually part of the seal between the covers that formed a rain gutter, and directed the crane operator to apply pressure on cover six by rotating the crane boom back and forth. The force of this jerking motion caused cover six suddenly to become free from cover five and roll rapidly down the inclined rails until the flanged forward edge of six cover came in contact with the flanged after edge of five cover. The force of this impact caused

five cover to come apart from four cover, to which it had been attached by a "locking dog," and at least one "load binder." The force of the impact broke the chain on the "load binder" and caused the pin to come out of the "locking dog." Malone, standing at the forward edge of five cover, lost his balance and fell into the barge a distance of approximately 17 feet landing on his feet at the bottom of the barge. The impact caused fractures of plaintiff's heels and perhaps an injury to plaintiff's neck.

■■ We will first consider the correctness of the trial court's award of $22,048 to Mechling for Bulk's breach of the implied warranty of workmanlike service owed by a stevedore to a vessel owner. We observe at the outset that recovery for breach of the warranty is generally totally permitted or totally denied. See cases collected, note 6, *Garner v. Cities Service Tankers Corp.*, 456 F.2d 476, 480 (5th Cir. 1972).

Malone brought his action under the general maritime law of the United States alleging his injuries were caused by the negligence of Mechling in failing to furnish him a safe place to work and the unseaworthy condition of the barge or either such negligence or unseaworthiness in the alternative. Both theories were predicated on the condition of the hatch covers and appurtenant equipment which caused them to become jammed and inoperative. The allegations need not be stated in detail as neither Mechling or Bulk contests the court's determination that Mechling was liable for plaintiff's injuries, as indeed they could not. (*Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 90 L. Ed. 1099, 66 S. Ct. 872 (1946).) While the applicable law is governed by the general maritime law of the United States, the action may be brought in the State forum by virtue of the "Saving to Suitors" provision of section 1333 of the Judiciary Code of 1948 (28 U.S.C. §1333).

■■ A stevedore's warranty of workmanlike service is based on contract. It has nothing to do with tort. (*Ryan Stevedoring Co. Inc. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 100 L. Ed. 133, 76 S. Ct. 232 (1956).) It arises by operation of law without regard to actual contract or privity of contract. (*Waterman Steamship Corp. v. Dugan & McNamara, Inc.*, 364 U.S. 421, 5 L. Ed. 2d 169, 81 S. Ct. 200 (1960).) Bulk does not question the general applicability of the warranty of workmanlike service to the facts of the case, but insists it is here inapplicable because the breach, if any, was not the proximate cause of the plaintiff's injuries which were caused by the negligence of Mechling, or as Bulk states the defense, caused by a breach by the shipowner (Mechling) of his duty owed a stevedore (Bulk) not to do any act which prevents or substantially hinders the stevedore in performing his work in a workmanlike manner. In any event, it argues, it should not be liable for attorney's fees and expenses, nor for any sum in excess of the value of the barge at the time of the accident inasmuch as

Mechling, as indemnitee failed to exercise reasonable diligence in undertaking to limit its liability to Malone, and therefore the ultimate liability of Bulk, the indemnitor, by instituting appropriate proceedings in the Federal district court within six months of notice of Malone's claim as required by 46 U.S.C. §185 (1970).

Section 183(a) of the Limited Liability Act (46 U.S.C. §183(a) (1970)) permits an owner of a vessel to limit his liability for injury or loss to an amount not in excess of the value of vessel and pending freight so long as the injury or loss was occasioned "without the privity or knowledge of such owner * * *." It is a peculiarity of maritime law. Its history and development are discussed at length in Gilmore & Black, The Law of Admiralty §10—4 *et seq.* (2d ed. 1975). In answer to Malone's complaint, Mechling pleaded the affirmative defense of limitation of liability alleging that on the date of the accident the value of the barge and freight then pending did not exceed $22,048. Approximately two years elapsed before the plaintiff replied denying Mechling's alleged right to limit its liability. At that time, Mechling instituted limitation proceedings in the United States District Court for the Southern District of Illinois, Southern Division. In a memorandum opinion dated January 19, 1976 (Union Mechling Corporation v. Jerry K. Malone, 1976 A.M.C. 2301 (S.D. Ill. 1976)), the court dismissed Mechling's complaint because it was not filed within six months after Mechling had received written notice of Malone's claim as required by section 185 of the Limited Liability Act (46 U.S.C. §185 (1970)). Accord, *Cincinnati Gas & Electric Co. v. Abel,* 533 F.2d 1001 (6th Cir. 1976), *cert. denied,* 429 U.S. 858, 50 L. Ed. 2d 136, 97 S. Ct. 158 (1976).

■■ Bulk argues that Mechling prejudiced its rights as indemnitor by failing to seasonably institute limitation proceedings in the proper forum; that Mechling could not in good faith assume that Malone would not contest its right to limit liability. If the right to limit liability is put in issue, then the question becomes cognizable only in admiralty and is beyond the jurisdiction of the State court to decide; however, it was thought that the claimant, at least where there was only one claimant, could admit the owner's right to limit liability in a State court under authority of *Langnes v. Green,* 282 U.S. 531, 75 L. Ed. 520, 51 S. Ct. 243 (1931), and *Ex Parte Green,* 286 U.S. 437, 76 L. Ed. 1212, 52 S. Ct. 602 (1932). We think it clear that Mechling was not justified in hoping the plaintiff would not contest its right to limit liability in admiralty. If it were serious in raising this defense, it should have been pursued promptly in the Federal forum; however, we do not believe Mechling's failure so to do is of any importance to the proper resolution of the issues before us.

Mechling and Bulk argue at length the duty owed by an indemnitee (Mechling) to his indemnitor (Bulk) to minimize the latter's loss or

exposure to loss. In the instant case, the court limited Mechling's recovery against Bulk solely because of Mechling's failure to institute limitation proceedings in the Federal court within the six months limitation period.

■■ We believe the weight of authority is that such duty does not extend to requiring the indemnitee to bring suit against third parties to protect the indemnitor. (*T. C. Bateson Construction Co. v. United States*, 319 F.2d 135 (Ct. Cl. 1963); *Erving Paper Mills v. Hudson-Sharp Machine Co.*, 271 F. Supp. 1017 (E.D. Wis. 1967); 42 C.J.S. *Indemnity* §40 (1944).) We would also observe that Bulk never insisted that Mechling pursue the matter in the Federal forum although it knew the defense had been raised as an affirmative defense to Malone's claim. In fact, realizing that Mechling had filed a third-party action for indemnity against it, Bulk could have undertaken Mechling's defense, including its possible right to limit liability. Bulk never quarreled with the manner in which Mechling defended the principle law suit, nor does it do so now.

More importantly, it is highly unlikely that Mechling could have succeeded in limiting its liability. Its liability to Malone was based on the unseaworthy condition of the hatch covers. (See *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 10 L. Ed. 2d 297, 83 S. Ct. 1185 (1963).) The shipowner can hardly claim that the unseaworthy condition of the barge existed without its "privity and knowledge" since it could by reasonable inspection have discovered the defective condition of the hatch covers.

■■ Limitation of liability is consistently denied at this date (see Gilmore & Black, The Law of Admiralty §10—4 *et seq.* (2d ed. 1975)), particularly where the liability of the shipowner is based on the unseaworthiness of the vessel. The trial court expressly found the barge unseaworthy because of the defective condition of the hatch covers. We believe the owner had a nondelegable duty to use due diligence to make the barge seaworthy; the condition of the hatch covers obviously existed prior to the instant unloading. Inspection would have revealed their condition which should have been corrected. In *China Union Lines, Ltd. v. A. O. Andersen & Co.*, 364 F.2d 769, 787 (5th Cir. 1966), the court stated, "Privity and knowledge are deemed to exist where the owner had the means of knowledge or, as otherwise stated, where knowledge would have been obtained from reasonable inspection." See Gilmore & Black, The Law of Admiralty, §10—24 *et seq.* (2d ed. 1975).

■■ We believe the thrust of recent cases is that limitation of liability will be denied where the unseaworthiness of the vessel consists of some structural defect in the vessel or its equipment or gear that could have been discovered from reasonable inspection. (For a general discussion, see *Waterman Steamship Corp. v. Gay Cottons*, 414 F.2d 724 (9th Cir. 1969), discussed in Gilmore & Black, The Law of Admiralty §10—24, at

891 *et seq.* (2d ed. 1975).) Barge JIH's condition demonstrated that the defects were not of recent origin. The trial court found Mechling negligent and the barge unseaworthy. The distinction is of little practical difference except for the peculiarities of admiralty law. In any event Mechling's negligence resulted in the unseaworthiness of the barge and our discussion above is not intended to fix on Mechling's negligence, but rather on the unseaworthy condition of the barge which has not been questioned on appeal. We appreciate Bulk's dilemma. In an effort to defeat Mechling's recovery for breach of the stevedore's warranty of workmanlike performance, it describes Barge JIH as a derelict. On the other hand, to protect its rights as indemnitor under the warranty, it insists Mechling should have seasonably instituted limitation proceedings in the Federal forum. We don't believe Bulk can have it both ways. Bulk has not brought to the court's attention a single case suggesting to us that Mechling could have been successful in its attempt to limit liability. It simply argues that Mechling should have tried. In *Coleman v. Jahncke Service Inc.*, 341 F.2d 956 (5th Cir. 1965), cited by Bulk, the court had little difficulty in concluding that a tug with a faulty compass was unseaworthy and charging the privity and knowledge of the unseaworthy condition to the corporate owner. Perforce, the long-existing defective condition of the hatch covers and defective appurtenant gear would be within the privity and knowledge of Mechling, a corporate owner. *Cf. Gibboney v. Wright*, 517 F.2d 1054 (5th Cir. 1975), as to an individual owner.

■■ We hold that Mechling was entitled to complete indemnity if entitled to indemnity at all and its failure to initiate limitation proceedings was an improper factor considered by the trial court in granting only partial indemnification.

■■ The duty of the shipowner to furnish a seaworthy ship, that is a vessel and appurtenances reasonably fit for their intended use is absolute. It does not turn on negligence, due care, or the owner's conduct or knowledge, only on the condition of the vessel. (*Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 27 L. Ed. 2d 562, 91 S. Ct. 514 (1971).) Negligence is a common law concept. Here the two concepts merge. The trial court found the barge unseaworthy and Mechling negligent. Mechling's negligence could only consist of furnishing a barge which it knew or should have known was fitted with defective hatch covers and appurtenances, "load binders" and "locking dogs." The trial court also found Bulk negligent. This negligence must have consisted in the conduct of Morgan, the deck supervisor or foreman, in causing hatch covers five and six to become jammed together and in the conduct of Malone in disengaging the covers in a violent manner without noting whether cover

five was properly secured to cover four, which he testified he failed to do.

■■ The basis of the warranty of workmanlike service originally formulated in *Ryan* has been said to rest on the shipowner's absolute liability because of unseaworthiness; other cases have interpreted *Ryan* as imposing liability on the stevedore because of his control over the vessel and his superior position to prevent accident or injury. (*Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.*, 376 U.S. 315, 11 L. Ed. 2d 732, 84 S. Ct. 748 (1964); but see *Fairmont Shipping Corp. v. Chevron International Oil Co.*, 511 F.2d 1252 (2d Cir. 1975).) Whatever the underlying basis of liability, we are satisfied that the weight of authority expressed in the numerous admiralty cases requires recovery by Mechling against Bulk for breach of the warranty of workmanlike service. In fact, our research has discovered few cases where recovery by the shipowner has been denied when the owner has been subjected to liability to the longshoremen because of the unseaworthiness of the ship or the negligence of the owner or crew.

■■ Numerous cases hold that regardless of the cause of the injury, whether the negligence of the shipowner in allowing a defective or dangerous condition to exist (*Weyerhaeuser Steamship Co. v. Nacirema Operating Co.*, 355 U.S. 563, 2 L. Ed. 2d 491, 78 S. Ct. 438 (1958)) or the unseaworthiness of the vessel, the stevedore is liable to indemnify the shipowner if a workmanlike performance would have eliminated the risk of injury. The defects in the hatch covers and appurtenances, none of which were latent, were known to Morgan, Bulk's superintendent, and obviously were known to Malone, Bulk's manager, who came onto the dock to supervise the closing of hatch cover six because of the difficulty experienced by the dock crew. He chose the method of performing the work. No Mechling personnel were present assisting or in any way advising Bulk's personnel. As was stated in *Brock v. Coral Drilling, Inc.*, 477 F.2d 211, 216 (5th Cir. 1973):

> "* * * Although a stevedore is not obligated to make an intensive inspection of the vessel, once aware of a dangerous condition, the stevedore may not ignore it. * * * The shipowner's breach of the duty of seaworthiness does not provide a license for the stevedore to ignore the consequences of its own actions since the stevedore's duty is to perform its services properly and safely in the face of known defects. [Citations.]"

The court further stated that the stevedore had a duty to correct the defective condition, require the shipowner to remedy it or stop work. Similar language appears in *United States v. Arrow Stevedoring Co.*, 175 F.2d 333 (9th Cir. 1949); *United States v. Rothschild International*

*Stevedoring Co.*, 183 F.2d 181 (5th Cir. 1950). We are not persuaded by Bulk's attempt to distinguish these cases as involving "known dangerous conditions, not mere defects."

In *Nicroli v. Den Norske Afrika-Og Australielinie, etc.*, 332 F.2d 651 (2d Cir. 1964), the court stated that the stevedore was charged with constructive notice of a dangerous condition whether attributable to the negligence of the shipowner or the unseaworthy condition of the vessel.

■■ ■ Furthermore, the trial court found that Malone's injury was caused in part by his own negligence, by his selection of the method of disengaging the hatch cover. Malone's negligence is Bulk's negligence regardless that he was also plaintiff in his action against Mechling. Thus the stevedore was negligent in selecting an improper manner of performing its work and this negligence constituted a breach of Bulk's warranty of workmanlike service. In *Arista Cia. DeVapores, S.A. v. Howard Terminal*, 372 F.2d 152 (9th Cir. 1967), the court held that a stevedore has a duty under the warranty of workmanlike service to provide longshoremen who exercise care for their own safety; that the failure to perform the work safely is a breach of the warranty "rendering the stevedore company liable for all harm to the shipowner resulting from the breach. This is true whether negligence of the longshoreman injures only himself or others." (372 F.2d 152, 154.) Like language appears in *United States Lines, Inc. v. Jarka Corp.*, 444 F.2d 26 (4th Cir. 1971); *McLaughlin v. Trelleborgs Angfartygs A/B*, 408 F.2d 1334 (2d Cir. 1969), *cert. denied sub nom.; Golten Marine Co. v. Trelleborgs Angfartygs A/B*, 395 U.S. 946, 23 L. Ed. 2d 464, 89 S. Ct. 2020; and *DeGioia v. United States Lines Co.*, 304 F.2d 421 (2d Cir. 1962).

■■ The rule developed in these cases, which we are obliged to follow as expressing the general maritime law, is that a finding of contributory negligence on the part of the injured longshoreman or maritime worker, is charged to the stevedore and establishes his liability to the shipowner under the warranty of workmanlike service. *Hartnett v. Reiss Steamship Co.*, 421 F.2d 1011 (2d Cir. 1970), *cert. denied sub nom. Grain Handling Company Inc. v. Hartnett*, 400 U.S. 852, 27 L. Ed. 2d 90, 91 S. Ct. 49, held that a jury finding that the injured longshoreman was one per cent contributorily negligent established the stevedore's breach of the warranty as a matter of law. Here the trial court found Malone "somewhat negligent."

We are told that this rule obtains only in the second, fourth and ninth circuits. But we must choose what we perceive to be the "general maritime law" and while agreeing with Judge Friendly that the cases involving the application of the stevedore's warranty of workmanlike service are a "wonderland" (*McLaughlin v. Trelleborgs Angfartygs A/B*, 408 F.2d 1334, 1338 (2d Cir. 1969)), a choice must be made. Consider that under *Sieracki* the liability of a shipowner to a longshoreman approaches

absolute liability. *Ryan* was thought an attempt to mitigate the felt harshness of this rule (see Gilmore & Black, The Law of Admiralty §§6-53, 6-55 (2d ed. 1975)), by allowing the shipowner to pass the ultimate liability on to the stevedore, the person best able to avoid injury to the longshoreman. Here, as is often the case, Bulk was in exclusive control of the barge and the unloading. No Mechling personnel were present. Bulk knew, or should have known, the condition of the barge and its appurtenances.

In the third and fifth circuits the negligence of the longshoreman is only a factor to be considered in determining if the stevedore has breached the warranty. (*Shaw v. Lauritzen*, 428 F.2d 247 (3d Cir. 1970); *Julian v. Mitsui O.S.K. Lines, Ltd.*, 479 F.2d 432 (5th Cir. 1973).) In any event, as we have noted, the trial court resolved this issue against Bulk.

■■ Regardless of the basis of the longshoreman's recovery against the shipowner, whether the unseaworthiness of the ship or the negligence of the owner (*Calmar Steamship Corp. v. Nacirema Operating Co.*, 266 F.2d 79 (4th Cir. 1959)), or some combination thereof, recovery is rarely denied. Thus, the warranty is breached where the conduct of the injured employee or his co-employees makes operable the unseaworthiness of the vessel, even in situations where the conduct is not characterized as negligence. (*Crumady v. Joachim Hendrik Fisser*, 358 U.S. 423, 3 L. Ed. 2d 413, 79 S. Ct. 445 (1959); *Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co.*, 376 U.S. 315, 11 L. Ed. 2d 732, 84 S. Ct. 748 (1964); *Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co.*, 444 F.2d 727 (3d Cir. 1971); *Southern Stevedoring & Contracting Co. v. Hellenic Lines Ltd.*, 388 F.2d 267 (5th Cir. 1968); *Dziedzina v. Dolphin Tanker Corp.*, 361 F.2d 120 (3d Cir. 1966).) "When injury occurs because of defective equipment, the stevedore is not entitled to set up the shipowner's negligence as a defense." *Kaminski v. A/B Svenska Ostasiatiska Kompaniet*, 445 F.2d 398, 403 (3d Cir. 1971).

■■ The only conduct on the part of the shipowner which will defeat his right to recover on the warranty is the active negligence of the owner or an unseaworthy condition of the ship that prevents or seriously hampers the stevedore from performing his work in a workmanlike manner. *Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc.*, 355 U.S. 563, 2 L. Ed. 2d 491, 78 S. Ct. 438 (1958); *Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co.*, 444 F.2d 727 (3d Cir. 1971); *Waterman Steamship Corp. v. David*, 353 F.2d 660 (5th Cir. 1965); *Garner v. Cities Service Tankers Corp.*, 456 F.2d 476 (5th Cir. 1972).

These cases hold that whether there is such conduct on the part of the shipowner, or whether the breach of the warranty is the proximate cause of the injury, are usually questions of fact for the jury's determination where, of course, the suit is tried before a jury; however, we find few

cases applying this rule to deny recovery to the owner. The mere creation of an unsafe condition aboard the ship, as the instant case, is not such "conduct." (*Mortensen v. A/S Glittre*, 348 F.2d 383 (2d Cir. 1965).) Here, the trier of fact, the court, resolved these issues against Bulk. We cannot say, nor is it claimed, that these determinations, which are implicit in the trial court's judgment, are against the manifest weight of the evidence. *Waterman Steamship* and *Humble Oil & Refining* would equate conduct on the part of the shipowner with an unseaworthy condition of the vessel if the unseaworthiness prevents the stevedore from performing in a workmanlike manner. Obviously the trial court, as the finder of fact, did not so find here as the only reason it limited Mechling's recovery on the warranty was because of its failure to institute limitation proceedings within the statutory time.

We find nothing in *Turner v. Global Seas, Inc.*, 505 F.2d 751 (6th Cir. 1974), and *Navieros Oceanikos S.A. v. S.T. Mobil Trader*, 554 F.2d 43 (2d Cir. 1977), cited by Bulk, that enlarges the rule of the above cases to Bulk's benefit. Thus in *Turner v. Global Seas*, the court held that the conduct of the master of the vessel in refusing to delay sailing when requested by the stevedore "prevented or seriously hampered" the stevedore from properly dunnaging the cargo which subsequently shifted and caused injury to a longshoreman at another port. The jury found in favor of the stevedores resolving the factual dispute in their favor.

■■ Bulk argues that Mechling may not recover its litigation expenses in defending Malone's claim as part of its damages for breach of the warranty of workmanlike service. We believe it is clear that it can. Where indemnification is allowed, the indemnitee is entitled to litigation expenses, reasonable counsel fees and expenses of litigation, in defense of the principal action. (*Burris v. Global Bulk Carriers, Inc.*, 505 F.2d 1173 (3d Cir. 1974); *Nicroli v. Den Norske Afrika-Og Australielinie, etc.*, 332 F.2d 651, 656 (2d Cir. 1964); *DeGioia v. United States Lines Co.*, 304 F.2d 421, 426 (2d Cir. 1962).) The award of attorney fees and expenses is affirmed.

Lastly, we consider, briefly, Mechling's contention that the trial court's award of $178,000 damages to Malone was excessive and against the manifest weight of the evidence.

■■ As a result of the fall, plaintiff admittedly received serious and permanent injuries, multiple fractures of the heel bones, the ossa calcis, in both feet. The only medical witness was plaintiff's orthopedic surgeon. He described the surgical procedures performed on the plaintiff. A second operation, an orthodesis or fusion of bones in his left foot, was necessary, and it was the doctor's opinion that the same operation would be required in the future on the right foot. It was his opinion that his condition would worsen in the future, that arthritic changes would

continually develop with attendant pain, which plaintiff stated was constant. It was the doctor's opinion that plaintiff would suffer progressive discomfort as the natural course of his injury. In short, the award of $178,000 for plaintiff's injury, even considering that plaintiff as a salaried employee had no lost wages, was not excessive. Clearly such an award by the court was not against the manifest weight of the evidence and certainly was not so excessive as to demonstrate it was the result of passion or prejudice on the part of the court. *Bumblauskas v. South Suburban Safeway Lines, Inc.*, 110 Ill. App. 2d 52, 249 N.E.2d 143 (1st Dist. 1969).

A more difficult matter is presented by Mechling's second contention concerning the award. Did the court properly consider the admiralty rule of comparative fault or negligence and reduce Malone's damages in proportion to his contributory negligence? The trial court found Malone "somewhat negligent." It would have been preferable for the court to follow the customary procedure followed in admiralty courts of first determining plaintiff's total damages, then express plaintiff's negligence, or fault, if any, as a percentage and reduce the damages accordingly. (See *Deneva v. Shipping Enterprise Corp.*, 486 F.2d 549 (5th Cir. 1973); *Nicroli v. Den Norske Afrika-Og Australielinie, etc.*, 332 F.2d 651, 653 (2d Cir. 1964).) Were this procedure followed, we would be more fully informed of the rationale of the trial court's decision. It is not suggested, however, that the procedure followed was in error.

■■ Mechling has cited cases for our consideration where the trial court has found the injured party's negligence a substantial percentage of the cause of the injury. Mindful that the findings of fact of the trial court sitting without a jury will not be disturbed unless clearly or manifestly erroneous (*Schatz v. Abbott Laboratories, Inc.*, 51 Ill. 2d 143, 281 N.E.2d 323 (1972)), we shall not disturb the court's finding that Malone was "somewhat negligent." Had we been the trier of fact we might well have found Malone's conduct a more significant factor in bringing about his injury; although, Malone testified he felt he was standing at a safe place as he never knew of any occasion when a "locking dog" "popped out" or the chain on a "load binder" broke when hatch covers were closed as they were in the instant case. He allowed, in retrospect, that he could have positioned himself at a safer place on the barge. We cannot say that the award was manifestly or clearly in error.

The judgment of the Circuit Court of Madison County fixing plaintiff's damages in the sum of $178,000 and awarding Mechling attorney's fees and expenses in its third-party action against Bulk is affirmed. The judgment in favor of Mechling, third-party plaintiff, and against Bulk awarding Mechling $22,048 in partial indemnification for breach of the implied warranty of workmanlike service is reversed and the cause is

remanded to the Circuit Court of Madison County with directions to enter proper judgment consistent with this opinion.

Affirmed in part; reversed in part; remanded.

EBERSPACHER, P. J., and FRIEDMAN, J., concur.