FRANK J. ZETTEL, Plaintiff, *v.* PASCHEN CONTRACTORS, INC., *et al.*, Defendants.—(PASCHEN-NEWBERG-GROVES *et al.*, Third-Party Plaintiffs-Appellants, *v.* GATEWAY ERECTORS DIVISION OF IMOCO-GATEWAY CORPORATION, Third-Party Defendant-Appellee.)—JOHN J. RICHTER, Plaintiff, *v.* NEWBERG-PASCHEN-GROVES *et al.*, Defendants.—(PASCHEN-NEWBERG-GROVES JOINT VENTURE *et al.*, Third-Party Plaintiffs-Appellants, *v.* GATEWAY ERECTORS DIVISION OF IMOCO-GATEWAY CORPORATION, Third-Party Defendant-Appellee.)

First District (4th Division)    Nos. 80-2213, 80-2214 cons.

Opinion filed July 30, 1981.—Rehearing denied October 15, 1981.

Eric A. Oesterle and Peter J. Valeta, both of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellants.

Jerome H. Torshen, Ltd., and Querrey, Harrow, Gulanick & Kennedy, Ltd., both of Chicago (Jerome H. Torshen, Abigail K. Spreyer, Victor J. Piekarski, and Glen E. Amundsen, of counsel), for appellees.

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

The sole issue in this case is whether an agreement by a subcontractor to obtain insurance covering, *inter alia*, claims arising under the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, pars. 60-69) against the contractor was void as prohibited by section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1975, ch. 29, par. 61). The trial court held that it was and dismissed the contractor's suit for damages for failure to obtain the promised insurance. We disagree and reverse.

On June 23, 1976, Gateway Erectors Division of Imoco-Gateway Corporation (Gateway), as a subcontractor, entered into a construction contract with Paschen-Newberg-Groves, a joint venture. Under the terms of the subcontract, Gateway agreed to perform certain services and to supply various materials in connection with the construction of a sewage treatment reclamation plant. The joint venture agreed to pay Gateway an amount in excess of $2,000,000 as consideration for Gateway's performance.

In section 10 of the subcontract, Gateway agreed to indemnify the joint venture for all losses arising out of any work connected with the performance of the work by the subcontractor, including all claims arising out of any structural work law. In section 11 of the subcontract, Gateway agreed to carry certain liability policies insuring the owner, architect, contractor and subcontractor for injuries or death of persons including Gateway's employees. That section further provided that:

> "Subcontractor further agrees to cause contractual liability endorsements to be issued by the insurance companies and attached to the above-mentioned policies, to include under the coverage therein extended an obligation on the part of the insurers to insure against Subcontractor's contractual liability hereunder and to indemnify the Owner, Architect, and Contractor against loss, liability, costs, expenses, attorneys' fees and court costs as provided in section 10 hereof, and further agrees that said coverage shall be afforded therein against all claims arising out of the operation of any structural work law or law imposing liability arising out of the use of scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances."

Two employees (Richter and Zettel) filed suit against the joint venture under the Illinois Structural Work Act for damages for injuries suffered. In each case the joint venture demanded that Gateway tender

the defense of the joint venture to Gateway's liability insurer. When Gateway failed to respond to these demands, the joint venture filed the third-party actions involved in this appeal. In the actions, the joint venture asked for judgment against Gateway in the amount of any judgment obtained against it together with the joint venture's attorney's fees and costs of defense.

In each case Gateway filed a motion to strike and dismiss these claims. After hearing extensive oral argument, the trial court in its order in each case found that the clear language of the subcontract required Gateway to procure insurance for the joint venture for all claims arising under the Structural Work Act, including claims for violations of the Act by the joint venture. Nevertheless, the court concluded that it was compelled under the rationale of *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881, to hold the agreement was void and unenforceable pursuant to section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1975, ch. 29, par. 61). Accordingly the court granted the motions to dismiss. It also entered in each case an order under section 304(a) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a)), providing for immediate reviewability.

The joint venture appealed both orders in both cases and the appeals were consolidated. The defendant did not cross-appeal. In its appeal, the joint venture has simply asked that the judgments be reversed with instructions to deny the motions to dismiss plus such other relief as the court may deem necessary.

## I

■■ On appeal Gateway contends that the judgment of dismissal should be affirmed, for two reasons: (1) any agreement to obtain insurance was void and (2) sections 10 and 11 of the subcontract do not clearly and unequivocally require Gateway to procure liability insurance to indemnify the joint venture for liability arising from the joint venture's actions. What, in effect, Gateway wishes this court to do is to reverse the trial court's judgment, which expressly found that the contract did require Gateway to obtain such insurance. But, since Gateway did not cross-appeal from that finding, we have no power to review it. As we recently reiterated in *Gibson v. Village of Wilmette* (1981), 97 Ill. App. 3d 1033, ___ N.E.2d ___, since the appellee has not cross-appealed from the contested finding, it is final and we have no jurisdiction to review it here. (*Clodfelter v. Van Fossan* (1946), 394 Ill. 29, 67 N.E.2d 182; *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868; *Swenson v. Wintercorn* (1968), 92 Ill. App. 2d 88, 234 N.E.2d 91, *appeal denied* (1968), 38 Ill. 2d 630.) Absent a notice of cross-appeal, the matters sought to be reviewed are not preserved for review and decision by the court. (*Pioneer Trust & Savings*

*Bank v. County of McHenry* (1967), 89 Ill. App. 2d 257, 232 N.E.2d 816, *rev'd on other grounds* (1968), 41 Ill. 2d 77, 241 N.E.2d 454; *Bawden v. Furlong* (1958), 16 Ill. App. 2d 174, 147 N.E.2d 889, *appeal denied* (1958), 13 Ill. 2d 627.) It is true, as Gateway contends, that an appellee can sustain a decree upon any basis in the record even if that issue has not been previously urged. But where a general verdict for an appellee contains a specific finding not in its favor and the appellee fails to file a cross-appeal, the adverse finding is not properly before the reviewing court. *Village of Arlington Heights v. National Bank* (1977), 53 Ill. App. 3d 917, 369 N.E.2d 502.

## II

■■ Accordingly, the only issue before this court is whether the trial court erred in holding the agreement void under section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1975, ch. 29, par. 61), which provides:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable."

Section 3 of the act (Ill. Rev. Stat. 1975, ch. 29, par. 63) provides that the act "does not apply to construction bonds or insurance contracts or agreements."

We agree with Gateway that section 3 of the act is not applicable. An agreement to obtain insurance is not an agreement of insurance; a person promising to obtain insurance does not by that promise become an insurer although he may assume the liabilities of one if he breaches the agreement. (*Connor v. Thompson Construction & Development Co.* (Iowa 1969), 166 N.W.2d 109; *Midwest Lumber Co. v. Dwight E. Nelson Construction Co.* (1972), 188 Neb. 308, 196 N.W.2d 377; 4 Appleman, Insurance Law & Practice §2261 (1969).) Even more clearly, however, a promise to obtain insurance is not the same as a promise to indemnify. (See, for example, *Zadak v. Cannon* (1974), 59 Ill. 2d 118, 319 N.E.2d 469; *Vandygriff v. Commonwealth Edison Co.* (1980), 87 Ill. App. 3d 374, 408 N.E.2d 1129; *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 401 N.E.2d 1032, *appeal denied* (1980), 81 Ill. 2d 599; *Marshall Field & Co. v. J. B. Noelle Co.* (1967), 81 Ill. App. 2d 409, 226 N.E.2d 454; *Hooks v. Southeast Construction Corp.* (D. C. Cir. 1976), 538 F.2d 431.) Under an indemnity agreement, the promisor agrees to assume all responsibility

and liability for any injuries or damages. Under an agreement to obtain insurance the promisor merely agrees to procure the insurance and pay the premium on it. Once the insurance is obtained, the promisor bears no responsibility in the event of injury or damage, even if the insurer should breach the insurance agreement through no fault of the promisor. While the joint venture in this case is suing to recover any monies it may have to pay to the injured parties plus all costs of defense, this is not because Gateway promised to indemnify the joint venture; it is because if a person breaches a contract to obtain insurance, he is liable for any damages caused by the breach. In this case this would be the amount of any judgments up to the amount of the policy limits bargained for (or perhaps beyond if an insurer under the facts presented would have settled the cases rather than allowed them to go to judgment) plus the costs of defending the tort action. *Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 208 N.E.2d 12, *appeal denied* (1965), 32 Ill. 2d 625; *Waumbec Mills, Inc. v. Bahnson Service Co.* (1961), 103 N.H. 461, 174 A.2d 839; *Kenyon v. Larsen* (1980), 205 Neb. 209, 286 N.W.2d 759.

Gateway argues, however, that following the reasoning of the Illinois Supreme Court in *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881, we should find the insurance provision void. The Illinois Supreme Court in *Davis* upheld the constitutionality of section 1 of the act, reasoning in part:

"The legislature in enacting section 1 may have considered that the widespread use of these agreements in the industry may have removed or reduced the incentives to protect workers and others from injury. (See Prosser, Handbook of the Law of Torts sec. 4 (4th ed. 1971).) For example, persons having 'charge of the work' and, thus, persons liable for violations of the Structural Work Act are able to escape the consequences of this liability by requiring indemnifying agreements from, let us say, general contractors or subcontractors. Having arranged the avoidance of the burdens of liability they no longer have the same motivation 'to lessen the extent of the danger' (*Halberstadt v. Harris Trust & Savings Bank*, 55 Ill. 2d 121, 127) to the prejudice of the worker's safety and interest. Too, the members of the general public protected from dangers presented by, for example, the improper design, construction and maintenance of buildings would be obviously affected adversely if those charged with responsibility were able to avoid the consequences of liability through indemnity agreements. Viewed in this light, we consider that section 1 of the indemnity statute serves to protect workers in the industry and the public as well from dangers associated with construction work. The statute would thwart attempts to avoid the consequences of liability and

thereby insure a continuing motivation for persons responsible for construction activities to take accident prevention measures and provide safe working conditions." 61 Ill. 2d 494, 499, 336 N.E.2d 881, 884.

That not all attempts to shift responsibility are against public policy is clear from the more recent Illinois Supreme Court case of *Capua v. W. E. O'Neil Construction Co.* (1977), 67 Ill. 2d 255, 367 N.E.2d 669. In *Capua*, the contractors and the sureties agreed in a construction bond to indemnify the Sanitary District against all liabilities and judgments against the District, including liabilities and judgments arising under the Structural Work Act. The defendants argued that the exemption in section 3 of the act was limited to performance and payment bonds and did not apply to bonds containing hold harmless agreements. The court disagreed, pointing out that if that were true the legislature could simply have made no mention of construction bonds in section 3. The supreme court further reasoned:

"This protective interest of the legislature is manifested also through section 3. That section protects the interests of construction workers and members of the general public who may suffer injury through improper construction or maintenance by preserving supplemental sources of compensation for injured persons, namely insurance and indemnifying and hold-harmless agreements in construction bonds. For example, a worker injured on a construction project may look to the owner of the building and the contractor, his employer, for compensation. However, there will be times when the worker will be unable to recover, as when the defendant is insolvent or the damages simply too large for him to satisfy. If the contractor were required by the owner to post a construction bond in which he agreed to indemnity or hold harmless the owner, the injured worker may look to the surety for satisfaction of his claim if the owner is unable to satisfy his liability. Section 1, without more, would deny the worker the possibility of recovering from the surety because it would void the indemnity or hold-harmless agreement in the construction bond. It is reasonable to conclude that the legislature, knowing that construction bonds are frequently used as a means to assure compensation for injured workers, enacted section 3 so that this potential source of compensation for injured workers would be preserved. Section 3 serves to complement section 1." (67 Ill. 2d 255, 260, 367 N.E.2d 669, 671-72.)

It seems to us that the same reasoning applies here. The statute clearly permits the general contractor to obtain insurance to cover its liabilities. It is immaterial whether the contractor obtains this insurance through an

agent or broker or through a subcontractor. The same purpose is served—that of assuring compensation for injured workers. And since the obtaining of insurance is permitted by statute, there is no reason to strike down, as against public policy, an agreement to obtain insurance.

As we mentioned earlier in this opinion, a person breaching an agreement to obtain liability insurance is liable for all resulting damages including the amount of judgments against the promisee and the costs of defense. It is established that Gateway promised to obtain such insurance and is bound by that agreement. This case arose on a motion of Gateway to dismiss. It does not appear that the appellant had filed its own motion for summary judgment, nor has the appellant on appeal requested us to enter a judgment establishing Gateway's liability. There may be questions remaining as to whether Gateway did in fact fail to obtain the required insurance. Accordingly, we reverse and remand the case to the trial court for further proceedings in accordance with this opinion.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.