HENRY ST. JOHN, Plaintiff, v. THE CITY OF NAPERVILLE, Defendant and Counterplaintiff-Appellee (Utility Dynamics Corporation, Third-Party Defendant and Counterdefendant-Appellant).

Second District   No. 2—86—1001

Opinion filed May 22, 1987.

Nancy A. McKeating, of Rooks, Pitts & Poust, of Wheaton, for appellant.

David Lincoln Ader and Marvin J. Glink, both of Ancel, Glink, Diamond, Murphy & Cope, of Chicago, for appellee.

JUSTICE NASH delivered the opinion of the court:

Third-party defendant, Utility Dynamics Corporation (Utility), brings this interlocutory appeal pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308) from a summary judgment in favor of third-party plaintiff, the city of Naperville, in which the trial court determined that Utility's contractual obligation to obtain insurance protecting Naperville from liability was not void as against public policy.

In 1978, the parties entered into a contract in which Utility agreed to construct an extension of the city's electrical system and to procure insurance coverage to protect Naperville from liability for injuries and other loss and expenses (including attorney fees) by reason of such liability. Utility did not provide the insurance, and in 1979 plaintiff, Henry St. John, was injured at the construction site. Plaintiff sought recovery for his injuries against Naperville and it brought this third-party action against Utility for contribution and breach of contract to insure. Naperville sought recovery for legal costs to defend the underlying action and for a sum equal to any judgment entered against it in that case.

Utility sought summary judgment on grounds that the contract terms requiring it to provide insurance were void under section 1 of "An Act in relation to indemnity in certain contracts" (Indemnification Contracts or Agreements Act or Act) (Ill. Rev. Stat. 1985, ch. 29, par. 61), and Naperville moved for summary judgment on grounds that Utility had breached its contractual obligation to acquire insurance. The trial court denied Utility's motion and granted Naperville's motion, and this court allowed interlocutory appeal.

The relevant portions of the agreement between the parties are as

follows:

"2. The Contractor shall provide all insurance necessary to protect and save harmless the property, the Owner and his representatives and the Contractor within the statutes of the State, and including, but not limited to those herein enumerated:

\* \* \*

c. Insurance shall include the following requirements, clauses and policies;

(1) Operations—Premises Liability
(2) Elevator Liability
(3) Contractor's Protective Liability
(4) Products Liability—Completed Operations Liability
(5) Contractual Liability equal to the following hold harmless agreement:

'The Contractor agrees to indemnify and save harmless the Owner, their agents and employees from and against all loss and expenses (including costs and attorneys' fees) by reason of liability imposed by law upon the Owner for damages because of bodily injury, including death at any time resulting therefrom sustained by any person or persons on or account of damage to property, including loss of use thereof, arising out of or in consequence of the performance of this work, whether such injuries to persons or damage to property be due to the negligence of the Contractor, his Subcontractors or the Owner.' "

Section 1 of the Indemnification Contracts or Agreements Act provides that, with respect to public or private contracts for the construction or maintenance of any building or structure, "every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." However, this provision must be considered in relation to section 3 of the Act (Ill. Rev. Stat. 1985, ch. 29, par. 63), which provides that it is not applicable to construction bonds or insurance contracts or agreements.

The Act was first examined in *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881, where the court noted that the widespread requirement of indemnity agreements from general contractors and subcontractors had removed or reduced any incentive for owners to take steps to protect workers and others from injury. The court stated that the Act was intended to "thwart attempts to avoid the consequences of liability and thereby insure a continuing

motivation for persons responsible for construction activities to take accident prevention measures and provide safe working conditions." (61 Ill. 2d 494, 499, 336 N.E.2d 881.) The court noted that section 3 merely made it clear that section 1 did not prevent purchases of insurance agreements to assure the performance or the satisfaction of liability. 61 Ill. 2d 494, 503, 336 N.E.2d 881.

In *Capu v. W. E. O'Neil Construction Co.* (1977), 67 Ill. 2d 255, 367 N.E.2d 669, the court held that a contract which required that a construction bond containing indemnity agreements and agreements to hold harmless be furnished by the contractors to the construction project owner was not void under the Act. The court stated that the agreements in the bond were valid under section 3 of the Act, which was intended to protect the interests of persons injured due to the construction or maintenance "by preserving supplemental sources of compensation for injured persons, namely insurance and indemnifying and hold-harmless agreements in construction bonds." (67 Ill. 2d 255, 260, 367 N.E.2d 669.) The court in *Champagnie v. W. E. O'Neil Construction Co.* (1979), 77 Ill. App. 3d 136, 142, 395 N.E.2d 990, subsequently held that an agreement for indemnity of one's own negligence is not void under the Act if it is found in a construction bond or insurance contract.

The reasoning of *Capua* was extended in *Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 427 N.E.2d 189, *appeal denied* (1982), 88 Ill. 2d 555, where the court considered a provision in which a subcontractor agreed to secure insurance to provide indemnity for the owner, the architect, and the contractor for all losses arising out of the project, including all claims brought under the Structural Work Act. The court distinguished between a promise to obtain insurance and a promise to personally indemnify another party, stating:

> "Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries or damages. Under an agreement to obtain insurance the promisor merely agrees to procure the insurance and pay the premium on it. Once the insurance is obtained, the promisor bears no responsibility in the event of injury or damage, even if the insurer should breach the insurance agreement through no fault of the promisor." (100 Ill. App. 3d 614, 617-18, 427 N.E.2d 189.)

That court held that the subcontractor had merely promised to obtain insurance to provide indemnity for the other parties, and, since the obtaining of insurance was permitted under section 3 of the Act, the agreement was not void as against public policy. 100 Ill. App. 3d 614,

620, 427 N.E.2d 189.

In *Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 484 N.E.2d 542, a third-party complainant sought damages against a subcontractor for breach of contract to maintain insurance with a contractual liability clause or a hold harmless endorsement. Clause 3 of the agreement between the parties obligated the subcontractor to "maintain insurance in the following limits and cause a so-called contractual liability and/or hold harmless endorsement to be issued by the insurance company or companies insuring all the Subcontractors indemnity obligations under this agreement." (137 Ill. App. 3d 352, 363, 484 N.E.2d 542.) Clause 5 of the contract, which did not refer to the requirement to maintain insurance, provided that the subcontractor agreed to indemnify and hold harmless the contractor from any loss, damage or liability. In construing the contract, the court found that clause 5 of the contract was void as a promise to indemnify another from that person's own negligence under section 1 of the Act. (137 Ill. App. 3d 352, 364-65, 484 N.E.2d 542.) It then held that, since clause 3 required insurance only for the indemnity obligations under the contract and the indemnity obligation was void, the subcontractor did not have a duty to purchase insurance under the contract. (137 Ill. App. 3d 352, 365, 484 N.E.2d 542.) The court distinguished *Zettel* by noting that the agreement in that case was one to procure insurance against claims brought under the Structural Work Act and was not one insuring an indemnity provision contrary to the Act. 137 Ill. App. 3d 352, 365, 484 N.E.2d 542.

In the present case, Utility argues that its agreement with Naperville was void, as it required Utility to become the city's personal indemnitor, rather than merely an agreement to procure insurance that would indemnify Naperville.

In determining the meaning of a contract, every effort must be made to effectuate the intentions of the parties (*Braeside Realty Trust v. Cimino* (1985), 133 Ill. App. 3d 1009, 1011, 479 N.E.2d 1031; *A. A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.* (1985), 132 Ill. App. 3d 325, 328, 477 N.E.2d 30), and toward that end, contracts should be interpreted as a whole, giving meaning and effect to every provision thereof. (*In re Support of Halas* (1984), 104 Ill. 2d 83, 92, 470 N.E.2d 960; *Bank of Homewood v. Sjo* (1983), 113 Ill. App. 3d 179, 183, 446 N.E.2d 1214, *appeal denied* (1983), 96 Ill. 2d 537.) The contract's meaning must be determined from the words or language used, and the court cannot place a construction on the contract which is contrary to the plain and obvious meaning of the language. *Johnstowne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 287, 458

N.E.2d 480; *Vigilante v. National Bank* (1982), 106 Ill. App. 3d 820, 823, 436 N.E.2d 652.

Here, the provision within subsection 2(c)(5) stated that Utility was to indemnify Naperville against all losses and expenses, including costs and attorneys' fees, resulting from injuries or property damage arising from the construction. That subsection is contained within section 2 of the contract, which provided generally that Utility was to provide insurance necessary to protect Naperville and enumerated the types of insurance required. Subparagraph (c) specified the policies the insurance was to contain, including subsection (5), which stated that Utility was to secure insurance for contractual liability "equal to" the indemnity provision.

■ Upon consideration of the contract as a whole, we find that the agreement, like that discussed in *Zettel*, expresses an intent on the part of the parties that Utility was to secure insurance to provide indemnity for Naperville and did not constitute a promise to personally indemnify Naperville for injuries or property damage resulting from the construction. We consider it noteworthy that, unlike the provision declared void in *Shaheed*, the indemnity provision in the present contract is contained within the general section dealing with Utility's obligation to secure insurance for Naperville and is identified as an agreement to be incorporated in the procured insurance. We also consider that the use of the phrase "equal to" in subsection (5) denotes an understanding on the part of Utility and Naperville that the indemnity provision is not the bargained-for thing itself, but merely a description of the scope of coverage which Utility was required to obtain in the insurance policy. Since the procurement of insurance is allowed under section 3 of the Act, we consider that the contract was not void as against public policy under the Act and the trial court did not err in granting summary judgment in favor of Naperville based on Utility's failure to secure insurance. See *Bosio v. Branigar Organization, Inc.* (1987), 154 Ill. App. 3d 611.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LINDBERG, P.J., and INGLIS, J., concur.