612 N.E.2d 1375 (1993)
245 Ill. App.3d 320
184 Ill.Dec. 215
GTE NORTH, INCORPORATED, an Illinois Corporation, a/k/a General Telephone Company of Illinois, Plaintiff-Appellant,
v.
HENKELS & McCOY, INC., a Pennsylvania Corporation, Defendant-Appellee.
No. 4-92-0839.
Appellate Court of Illinois, Fourth District.
Argued March 23, 1993.
Decided May 6, 1993.
*1376 Alfred B. LaBarre (argued), Heckenkamp, Simhauser & LaBarre, P.C., Springfield, for plaintiff-appellant.
Karen L. Kendall, Bradley S. McMillan (argued), Heyl, Royster, Voelker & Allen, Peoria, Frederick P. Velde, Kurt M. Koepke, Heyl, Royster, Voelker & Allen, Springfield, for defendant-appellee.
Justice GREEN delivered the opinion of the court:
This case involves the operation of the Construction Contract Indemnification for Negligence Act (Act) (see Ill.Rev.Stat. 1991, ch. 29, par. 60.90 et seq.), sections 1 and 3 of which, respectively, state as follows:
"With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." Ill.Rev.Stat. 1991, ch. 29, par. 61.
"This Act does not apply to construction bonds or insurance contracts or agreements." Ill.Rev.Stat.1991, ch. 29, par. 63.
On December 9, 1991, plaintiff GTE North, Inc., a/k/a General Telephone Company of Illinois (Owner), filed suit in the circuit court of Morgan County against defendant Henkels & McCoy, Inc. (Contractor). Owner sought a declaration that an agreement under which Contractor was constructing a building for Owner required Contractor to defend Owner in a pending case. In that suit William H. Byus, an employee of Contractor, was suing Owner to recover damages for injuries Byus received while working on the project which was the subject matter of the agreement between Contractor and Owner. Negligence was charged. On September 11, 1992, the circuit court entered a summary judgment for Contractor, declaring that Contractor was neither required to defend Owner in the foregoing suit nor to indemnify Owner for any liability incurred from the suit. Owner appeals. We affirm.
Summary judgment is properly granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a *1377 matter of law." (Ill.Rev.Stat.1991, ch. 110, par. 2-1005(c); see also Purtill v. Hess (1986), 111 Ill.2d 229, 240, 95 Ill.Dec. 305, 309, 489 N.E.2d 867, 871; Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis (1992), 229 Ill.App.3d 680, 682, 171 Ill.Dec. 250, 252, 593 N.E.2d 1070, 1072.) As summary judgment is appropriate only when a party is shown to be entitled to the judgment as a matter of law, no deference can be given on review to the decision of the trial court. Outboard Marine Corp. v. Liberty Mutual Insurance Co. (1992), 154 Ill.2d 90, 102, 180 Ill.Dec. 691, 696, 607 N.E.2d 1204, 1209.
This case turns upon the effect the Act has upon the agreement between Owner and Contractor. The record shows Owner requested a defense and Contractor refused to provide it. The parties agree that their agreement is a construction contract within the meaning of section 1 of the Act.
The significant portions of the agreement are paragraphs 14 and 15, the pertinent provisions of which state as follows:
"14. INDEMNIFICATION

14.1. Contractor agrees to indemnify and save harmless [Owner], its agents or employees, from and against all damages, claims[,] or liabilities without limiting the generality of the foregoing arising out of or related to this Agreement and the performance of any work thereunder, and from all claims, liens, or suits for labor and materials furnished contractor or any subcontractor, and all claims and suits for damages to persons, including [Owner's] employees not specifically exempt herein except only such loss, claims or damage as shall have been proven, determined and found by a court of competent jurisdiction to have been proximately caused by the sole negligence of [Owner]. Contractor, with respect to this Indemnification, agrees to defend and will defend on behalf of [Owner] any suits brought jointly against [Owner] and Contractor or against [Owner] alone, for or arising out of any or all of the aforesaid causes, and will reimburse [Owner] for attorney's fees and other expenses incurred by [Owner] in defending any such suits.
15. INSURANCE

15.1 Contractor shall maintain in full force and effect during the performance of the work, the following insurance policies with insurance companies approved by [Owner].
15.1.1 Workmen's Compensation and Occupational Disease * * *. * * *
15.1.2 Comprehensive General Liability insurance * * *. * * * [Not covering liability of Owner.]
15.1.3 Comprehensive Automobile Liability insurance * * *. * * *
15.1.4 The insurance provided pursuant to the foregoing shall include Contractual Liability coverage in accordance with Contractor's obligations under Paragraph 14 above and, if underground work, demolition, blasting, excavation or rigging is involved, the applicable insurance policy exclusions relating thereto shall be deleted." (Emphasis added.)
The most significant parts of the foregoing are the provisions which purport to require the Contractor to (1) indemnify Owner for liability for Owner's negligence in connection with the construction project, (2) defend Owner in a suit arising from the foregoing, and (3) provide contractual liability insurance covering Contractor's promises in regard to items (1) and (2).
Clearly, Contractor's purported obligation to indemnify Owner is voided by the provision of section 1 of the Act. Any agreement of Contractor to defend Owner here would have to arise from paragraph 14.1 of the agreement. That paragraph is entitled "INDEMNIFICATION." The purported agreement to defend is stated in these words: "Contractor, with respect to this Indemnification, agrees to defend * * *." Where a contract for indemnification provides for the indemnitor to defend the indemnitee, that duty is an aspect of the indemnification. Montgomery Ward & Co. v. Wetzel (1981), 98 Ill.App.3d 243, 253, 53 Ill.Dec. 366, 374-75, 423 N.E.2d 1170, 1178-79; Malone v. A.L. Mechling Barge *1378 Lines, Inc. (1978), 63 Ill.App.3d 756, 768, 20 Ill.Dec. 519, 528, 380 N.E.2d 497, 506.
The wording of the agreement seems to tie the purported agreement to defend to the indemnification provision of the agreement so closely that it comes within the prohibition of section 1 of the Act. However, Owner contends that section 3 of the Act, which exempts "construction bonds or insurance contracts or agreements" (see Ill.Rev.Stat.1991, ch. 29, par. 63) from the prohibition of section 1 of the Act, justifies the agreement to defend here because paragraph 15 of the agreement requires Contractor to furnish certain types of insurance. This argument would seem to fail because Owner is not seeking to have an insurer furnish a defense but is seeking to require Contractor to do so. Owner is not seeking to sue Contractor for damages for failure to provide a defense.
In any event, no valid provision of the agreement required Contractor to furnish insurance which would provide Owner a defense to the instant suit by Byus. A long series of appellate court decisions concern the situation where, as here, in construction contracts, one party is required to indemnify the other for damages arising from the construction and also to require the indemnitor to furnish insurance. In all cases where the insurance to be provided is to be liability insurance protecting the indemnitee as an insured, that provision of the contract has been upheld against contention that it violates section 1 of the Act. See Jokich v. Union Oil Co. (1991), 214 Ill.App.3d 906, 158 Ill.Dec. 420, 574 N.E.2d 214, St. John v. City of Naperville (1987), 155 Ill.App.3d 919, 108 Ill.Dec. 551, 508 N.E.2d 1128, Bosio v. Branigar Organization, Inc. (1987), 154 Ill.App.3d 611, 107 Ill.Dec. 105, 506 N.E.2d 996, Zettel v. Paschen Contractors, Inc. (1981), 100 Ill. App.3d 614, 56 Ill.Dec. 109, 427 N.E.2d 189.
Here, Contractor did not agree to provide insurance for Owner which would insure Owner for liability arising from the construction project which was the subject of the parties' agreement. Rather, Contractor agreed to provide insurance which would insure Contractor for its contractual liability under its obligations under paragraph 14 of the agreement, which required Contractor to indemnify Owner and, "[in] respect to [that] Indemnification," defend suits against Owner. The situation here was very similar to that in Shaheed v. Chicago Transit Authority (1985), 137 Ill. App.3d 352, 92 Ill.Dec. 27, 484 N.E.2d 542.
In Shaheed, a contractor for a construction project for the Chicago Transit Authority, when sued under the Structural Work Act (Ill.Rev.Stat.1983, ch. 48, par. 60 et seq.), brought a third-party complaint against a subcontractor for breach of the agreement between the contractor and subcontractor. Paragraph three of that agreement provided that the "`Subcontractor shall maintain insurance in the following limits and cause a so-called contractual liability and/or hold harmless endorsement to be issued by the insurance company or companies insuring all the Subcontractors indemnity obligations under this agreement * * *.'" (Shaheed, 137 Ill.App.3d at 363, 92 Ill.Dec. at 36, 484 N.E.2d at 551.) Paragraph five of the contract, which did not refer to the agreement to insure, provided that the subcontractor agreed to indemnify and hold harmless the contractor for all losses, damages and liability. Shaheed, 137 Ill.App.3d at 363, 92 Ill.Dec. at 36, 484 N.E.2d at 551.
The trial court found section 1 of the Act nullified any indemnification that was required under paragraph five of the agreement. It further found that paragraph three requiring insurance only for the indemnity obligations was void, since the only contractual indemnity obligation was found in paragraph five, which was also void. It therefore concluded that there was no contractual obligation to insure. In affirming the trial court's ruling, the first district distinguished its holding in Zettel by noting that the agreement in that case was one to procure insurance against claims brought under the Structural Work Act and not one insuring an indemnity provision contrary to the Act. Zettel granted insurance against known risks, those falling under the Structural Work Act, while in Shaheed the insurance was "sought *1379 * * * against a void agreement to indemnify." Shaheed, 137 Ill.App.3d at 365, 92 Ill.Dec. at 37, 484 N.E.2d at 552.
In Motor Vehicle Casualty Co. v. GSF Energy, Inc. (1989), 193 Ill.App.3d 1, 140 Ill.Dec. 233, 549 N.E.2d 884, a construction contractor had entered into a construction contract with an owner of property upon which the construction was to be performed. An employee of the contractor brought a Structural Work Act suit against the owner. The owner demanded the contractor's insurance carrier defend it. The carrier brought action for a declaration that it had no duty to do so. The appellate court held that the provision of the agreement for construction which the owner relied upon was void under section 1 of the Act as far as its operation in that case was concerned because it was, in effect, an indemnity agreement. Accordingly, the appellate court held that insurance coverage against a void agreement was necessarily void, citing Shaheed. No contention was made that the contractor had breached an agreement to provide liability insurance covering the liability of the owner.
The difference between the Jokich, St. John, Bosio, and Zettel line of cases, where the agreement is for the indemnitor to also obtain liability insurance for the indemnitee, and the cases such as Shaheed and Motor Vehicle Casualty is set forth in Juretic v. USX Corp. (1992), 232 Ill.App.3d 131, 173 Ill.Dec. 186, 596 N.E.2d 810. In that case, an electrical contractor had agreed with an owner to dismantle certain facilities of the owner. An electrician working for the contractor brought action against the owner under the Structural Work Act. The owner filed a third-party complaint against the contractor, alleging in one count that the contractor had breached a portion of their agreement for the contractor to purchase insurance for the owner. The circuit court dismissed that count, and the owner appealed pursuant to Supreme Court Rule 304(a) (107 Ill.2d R. 304(a)).
The owner-contractor agreement in Juretic had an article headed by the word "Indemnity," which was much the same as that here and also required the contractor to defend the owner. (Juretic, 232 Ill. App.3d at 132-33, 173 Ill.Dec. at 187, 596 N.E.2d at 811.) The agreement also had an article concerning insurance which, as here, required the contractor provide insurance covering the contractor's obligations under the indemnification article of the agreement. Unlike here, the agreement also required the contractor to procure insurance which would insure both the contractor's and the owner's liability to pay damages arising from the work which was the subject of the agreement. The insurance article required that the owner be made an additional insured under the latter policy.
The Juretic court reversed the dismissal of the count, holding that (1) the portion of the insurance provision in regard to furnishing insurance to cover the obligations of the indemnity provision was void because it was "inextricably tied" to the void indemnity provision (Juretic, 232 Ill.App.3d at 135, 173 Ill.Dec. at 188, 596 N.E.2d at 812), and (2) the provision to provide insurance to cover the liability of both the contractor and the owner and to have the owner become an additional insured was valid. Zettel was cited. Accordingly, upon reversal the cause was remanded with directions to permit the owner to amend the count to conform to the opinion.
Thus, the appellate court decisions clearly set forth that in construction contracts where one party purports to indemnify the other, provisions such as those herewhich insure the indemnitor for liability for not indemnifying or providing a defense to the indemniteeare not valid, while provisions which require the indemnitor to provide liability insurance for the indemnitee, making the indemnitee an insured under the policy, are valid. The supreme court has not spoken on this question, but the different treatment given by the appellate court in the two different situations is consistent with the supreme court's analysis of the intent of the Act.
In Davis v. Commonwealth Edison Co. (1975), 61 Ill.2d 494, 336 N.E.2d 881, the supreme court upheld the provisions of section 1 of the Act in the face of a charge *1380 that it violated equal protection because no rational basis existed to distinguish construction contracts from other contracts which might contain indemnity agreements. The court reasoned that incentives to exercise care in the performance of construction contracts are more important than in regard to other types of contracts because of the danger inherent in construction work. The court concluded that indemnity agreements were a disincentive to the exercise of care because such agreements relieved the indemnitee of the ultimate responsibility for its own carelessness.
Shortly after Davis, the supreme court decided Capua v. W.E. O'Neil Construction Co. (1977), 67 Ill.2d 255, 10 Ill.Dec. 216, 367 N.E.2d 669. There, the court rejected a contention that section 1 of the Act rendered indemnity or hold-harmless agreements in construction bonds void. The rationale of the decision was that (1) the legislature would not have included "construction bonds" in section 3 of the Act if agreements contained therein were to be prohibited by section 1 of the Act, and (2) section 3, by permitting such provisions in construction bonds and permitting insurance contracts to be viable, afforded injured parties a source of funds for recovery if the protected tortfeasor, who is a party to the contract, does not have financial resources to discharge a judgment against it.
Some uncertainty concerning the public purpose of the Act arises from the decisions in Davis and Capua, because both liability insurance and indemnity agreements negate incentive to be careful since they relieve the insured and the indemnitee from ultimate responsibility for their negligence. However, the two decisions, taken together, seem to express a policy in regard to indemnity agreements in construction contracts, which is as follows: (1) indemnity agreements, except in construction bonds and agreements to insure to protect the indemnitor from contractual liability, are void because the dominant aspect of these agreements is the disincentive to the exercise of care by the indemnitee which results; and (2) indemnity agreements in construction bonds and agreements to provide liability insurance for another party to the contract, even though that party is an indemnitee, are valid because their dominant aspect is to afford a source of funds for persons tortiously injured in the work on the construction contract.
Thus, although the difference between the Jokich line of cases and those which follow Shaheed may seem overly technical, they are consistent with the statements of the supreme court. Accordingly, although our reasons may seem overly technical, we conclude that existing precedent required the judgment of the trial court granting summary judgment to Contractor. We affirm that judgment.
Affirmed.
KNECHT, J., concurs.
COOK, J., specially concurs.
Justice COOK, specially concurring:
I agree that the Contractor, despite the language of paragraph 14, has no obligation to indemnify or defend the Owner. The questions whether the Contractor breached any agreement to procure insurance, and whether any insurance procured by the Contractor covers the Owner, are not reached by this appeal, and it is unnecessary for us to determine whether we would follow Shaheed if we did address those questions. If we had to choose between the policy of providing incentives for owners to protect workers from injury (Davis, 61 Ill.2d 494, 336 N.E.2d 881), and the policy of preserving supplemental sources of compensation (Capua, 67 Ill.2d 255, 10 Ill.Dec. 216, 367 N.E.2d 669), we should choose the latter.