TRANSCONTINENTAL INSURANCE COMPANY, in its own right and as Subrogee of Kennedy Homes, Ltd., Plaintiff-Appellant and Cross-Appellee, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Defendant-Appellee and Cross-Appellant.

First District (6th Division)    No. 1—94—2274

Opinion filed February 16, 1996.—Rehearing denied March 18, 1996.

John D. Kuhn, of Brinton & Fedota, of Chicago, for appellant.

Claussen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Mary F. Stafford, Nick Alexander, and Imelda Terrazino, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:

In May 1979, Kennedy Homes, Ltd., and Mohawk Construction entered into a contract under which Mohawk was to perform cement work as a subcontractor for a construction project for which Kennedy was a contractor. In April 1990, an employee of Mohawk, Desry Sykes, was injured at the construction site when he fell from a scaffold that collapsed. He filed a complaint against Kennedy and others, not including Mohawk, and alleged that these defendants violated the Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.* (subsequently 740 ILCS 150/0.01 *et seq.* (West 1992)) (repealed by Pub. Act 89—2, eff. February 14, 1995)). At the time of Sykes' injury, the plaintiff, Transcontinental Insurance Company, insured Kennedy. The defendant, National Union Fire Insurance Company of Pitts-

burgh, insured Mohawk under a commercial general liability policy with a policy term of March 6, 1990, to March 6, 1991.

The defendant rejected the plaintiff's tender of Kennedy's defense in the Sykes suit on the basis that Kennedy was not an additional insured under its policy. Kennedy and the plaintiff then filed a declaratory judgment action against the defendant and Mohawk, in which they sought a declaration that the defendant had wrongfully refused to defend Kennedy and must reimburse the plaintiff for sums it had expended in defending the suit. The defendant filed a counterclaim, in which it sought a declaration that it had no duty to defend or to indemnify.

Kennedy was not a party to any amended complaints. Transcontinental, in its own right and as subrogee of Kennedy, became the only plaintiff in complaints subsequent to the original. Mohawk was dropped as a defendant after the original complaint.

The plaintiff and defendant filed cross-motions for summary judgment, each of which the judge granted in part and denied in part. He ruled that the defendant had no duty to indemnify the plaintiff but that it had a duty to defend Kennedy and, therefore, must pay the plaintiff for "reasonable defense costs incurred in defending Kennedy" in the Sykes suit. The plaintiff and defendant appeal the judge's partial denial of their respective motions for summary judgment.

The allegations before the trial judge were as follows. In its July 9, 1993, second amended complaint, the plaintiff asserted that, before trial, it had paid Sykes $3,012,943 to settle his suit and that it had incurred fees and expenses of $136,416.54 in defending the suit. It alleged that, by refusing to defend and indemnify Kennedy in the Sykes suit, the defendant had breached its insurance contract and negligently and in bad faith breached its duty to provide coverage. It asked the judge to declare that Kennedy was an additional insured under the defendant's policy, that the defendant was obligated to provide a defense and indemnification; that its refusal to do so was wrongful; and that it was estopped from asserting any policy defenses. In addition, the plaintiff requested a declaration that the defendant's coverage was primary and that the defendant must reimburse the plaintiff for the sums it had expended in defense and settlement of the suit and in bringing the declaratory judgment action.

In its counterclaim, the defendant requested that the trial judge declare that the defendant was not obligated to defend Kennedy in the Sykes suit and that it was not obligated to reimburse or indemnify the plaintiff for any fees, costs, settlement or judgment resulting from the Sykes suit.

In deciding that the defendant had no duty to indemnify the plaintiff but had a duty to defend Kennedy, the judge made the following findings. The insurance agreement between Mohawk and Kennedy was an agreement by Mohawk to personally indemnify Kennedy against Kennedy's own negligence. As such, it was void under "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1989, ch. 29, pars. 61 to 63 (now the Construction Contract Indemnification for Negligence Act (740 ILCS 35/0.01 *et seq.* (West 1992)))) (Indemnification Act). The defendant, therefore, had no obligation to indemnify Kennedy. Nevertheless, the judge decided that it was not clear from the defendant's insurance policy that the Sykes complaint against Kennedy was beyond the defendant's policy's coverage. Consequently, the defendant was obligated to defend Kennedy.

The plaintiff contends that the trial judge erred in failing to find that Kennedy was an additional insured under the defendant's policy and, given the court's finding that the defendant had a duty to defend, in failing to find that the defendant was required to indemnify the plaintiff for the settlement it paid. As a cross-appeal, the defendant argues that the trial judge erred in holding that it had a duty to defend Kennedy when it had no duty to indemnify Kennedy.

The critical inquiry in this case is whether Kennedy was an additional insured under the defendant's policy with Mohawk at the time of the Sykes accident. The plaintiff argues that Kennedy was an additional insured under this policy according to the terms of a "Blanket Additional Insured" endorsement, which provided:

"1. Who is an insured (section II) is amended to include as an insured anyone for whom you have agreed prior to loss to provide insurance, but only as respect [*sic*] liability arising out of your premises or 'your work'.

2. This insurance does not apply to:

    (a) Liability arising out of the negligence of the additional insured; and

      ***

3. If required by your agreement with the additional insured, this insurance shall be primary insurance for the additional insured. If anyone, who does work for you also provides similar insurance for the additional insured, however, then that insurance will be primary, and this insurance will be excess over, or secondary to, that insurance."

According to the plaintiff, Mohawk agreed to provide insurance for Kennedy through the following provisions of its construction contract with Kennedy:

"4. Insurance Requirements

A. Subcontractor shall furnish, at Subcontractor's expense, prior to commencing upon the performance of the Work and keep in full force and effect during Subcontractor's performance thereof, the following insurance:

(i) Workmen's Compensation and Occupational Disease Insurance ***.

(ii) Public Liability Insurance ***.

(iii) Property Damage Insurance ***.

(iv) Products-Completed Operation Insurance ***.

(v) Independent Contractors Insurance ***.

(vi) Comprehensive Automobile and Other Motor Vehicle Public Liability Insurance ***.

B. Subcontractor shall obtain and furnish at Subcontractor's expense so-called Contractual Liability Endorsements to all policies described above, except Workmen's Compensation Insurance, whereby the insurer shall insure Subcontractor's obligations under Paragraph 17 and 18 herein. Subcontractor agrees to furnish all of the insurance described herein in companies, and in form satisfactory to Contractor, and to obtain and deliver to the Contractor certificates issued by the respective insurers, not later than the commencement of Work by Subcontractor, showing said insurance to be in effect and providing the same may not be cancelled without [sic] ten (10) days prior to written notice to Contractor. If Subcontractor fails to carry any insurance provided for herein, Contractor may procure same and charge the cost thereof to Subcontractor, but Contractor shall not be required to obtain such insurance. In such event, Subcontractor shall, in addition to paying the cost thereof, furnish all necessary information to make effective and maintain said insurance."

Section 17, to which this provision referred, concerned patent infringement. Section 18 provided in relevant part:

"Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the Work; and if any claims for such damage or injury (including death resulting therefrom) be made or asserted, whether or not such claims are based upon Contractor's alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty or obligation on the part of Contractor, Subcontractor agrees to indemnify and save harmless Contractor and the Owner *** from and against any and all such claims, and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees

and disbursements, that any of them *** may directly or indirectly sustain, suffer or incur as a result thereof and Subcontractor *** does hereby assume, on behalf of Contractor *** the defense of any action at law or in equity which may be brought against any of them *** upon or by reason of such claims and to pay on behalf of Contractor *** in any such action(s)."

The defendant contends that there was no agreement by Mohawk in these provisions to provide insurance for Kennedy. According to the defendant, section 4(A) contains a promise by Mohawk to buy insurance for itself, not for Kennedy; section 4(B) also does not contain an agreement by Mohawk to provide insurance for Kennedy; it is void under the Indemnification Act; and it is an agreement by Mohawk to insure its own obligations under the contract and, therefore, is not relevant to this case, in which there is no claim against Mohawk for violating its contractual obligations.

In response to the defendant's contentions, the plaintiff argues that language similar to that of section 4(A) has been held in other cases to be an agreement to obtain insurance, which agreements are not void under the Indemnification Act. (See *St. John v. City of Naperville* (1987), 155 Ill. App. 3d 919, 508 N.E.2d 1128; *Bosio v. Branigar Organization, Inc.* (1987), 154 Ill. App. 3d 611, 506 N.E.2d 996; *Coverdill v. Lurgi Corp.* (1986), 146 Ill. App. 3d 112, 496 N.E.2d 1007; *Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 427 N.E.2d 189.) Even if the insurance provisions of the construction contract were void, the plaintiff claims that this is not relevant to a determination of whether Kennedy was insured under the defendant's policy because this determination depends on the blanket additional insured endorsement not on the construction contract.

We disagree that the validity of the insurance provisions of the construction contract are not relevant to determining Kennedy's status as an additional insured. The plaintiff has not persuaded us that we may find that Kennedy was a party "for whom [Mohawk had] agreed prior to loss to provide insurance" if this agreement was void as a matter of law. In fact, the plaintiff cites no authority for this assertion.

■ We, therefore, begin our inquiry with a determination of whether any of the insurance provisions in the construction contract were void under the Indemnification Act. At the time of Sykes' injury, this statute provided:

"With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation

connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." (Ill. Rev. Stat. 1989, ch. 29, par. 61.)

The Act also stated that it did "not apply to construction bonds or insurance contracts or agreements." Ill. Rev. Stat. 1989, ch. 29, par. 63.

In interpreting the Indemnification Act, this court has explained that agreements in construction contracts to insure one's own obligations to indemnify another person for his negligence are void, but agreements to procure insurance for that other person are not void under the Indemnification Act:

> "[I]n construction contracts where one party purports to indemnify the other, provisions *** which insure the indemnitor for liability for not indemnifying or providing a defense to the indemnitee [ ] are not valid, while provisions which require the indemnitor to provide liability insurance for the indemnitee, making the indemnitee an insured under the policy, are valid." *GTE North, Inc. v. Henkels & McCoy, Inc.* (1993), 245 Ill. App. 3d 322, 328, 612 N.E.2d 1375.

In *Bosio v. Branigar Organization, Inc.* (1987), 154 Ill. App. 3d 611, 506 N.E.2d 996, the court further explained the differences between a void indemnity agreement and a valid insurance agreement:

> "[U]nder an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries or damages, while under an agreement to obtain insurance, the promisor merely agrees to procure the insurance and pay the premiums." *Bosio*, 154 Ill. App. 3d at 614, citing *Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 427 N.E.2d 189.

In this case, therefore, we must determine whether the construction contract contained an indemnity agreement or an agreement to obtain insurance. To make this determination, we compare the language of the contract to construction contracts in other cases.

■ We think that the language in Mohawk's contract with Kennedy is most like the language in *GTE North*, in which the court held that the insurance provisions of a construction contract were void under the Indemnification Act. In that case, the construction contract contained the following provisions:

> "14. *INDEMNIFICATION*
>
> 14.1. Contractor agrees to indemnify and save harmless [Owner], its agents or employees, from and against all damages, claims[,] or liabilities without limiting the generality of the foregoing arising out of or related to this Agreement and the performance of any work thereunder, and from all claims, liens, or suits for labor and materials furnished contractor or any subcontractor, and all

claims and suits for damages to persons, including [Owner's] employees not specifically exempt herein except only such loss, claims or damage as shall have been proven, determined and found by a court of competent jurisdiction to have been proximately caused by the sole negligence of [Owner]. Contractor, with respect to this Indemnification, agrees to defend and will defend on behalf of [Owner] any suits brought jointly against [Owner] and Contractor or against [Owner] alone, for or arising out of any or all of the aforesaid causes, and will reimburse [Owner] for attorney's fees and other expenses incurred by [Owner] in defending any such suits.

15. *INSURANCE*

15.1 Contractor shall maintain in full force and effect during the performance of the work, the following insurance policies with insurance companies approved by [Owner].

15.1.1 Workmen's Compensation and Occupational Disease ***.
***

15.1.2 Comprehensive General Liability insurance ***. *** [Not covering liability of Owner.]

15.1.3 Comprehensive Automobile Liability insurance ***. ***

15.1.4 The insurance provided pursuant to the foregoing shall include *Contractual Liability coverage in accordance with Contractor's obligations under Paragraph 14 above* ***." (Emphasis in original.) *GTE North*, 245 Ill. App. 3d at 324-25.

The court decided that the contractor's obligations under the indemnification provision were clearly void under the Indemnification Act. The contractor's agreement to insure its obligations to provide indemnification under paragraph 14 was also void because this agreement was inextricably tied to the void indemnification provision.

The court rejected the contractor's argument that the contract contained an agreement to obtain insurance and was, therefore, valid because the Indemnification Act does not apply to insurance contracts. The court found that the contractor had not agreed to provide insurance that would insure the owner from liability arising from the construction project. Instead, the contractor had agreed only to provide insurance to insure its *own* obligations to indemnify the owner under paragraph 14. *GTE North*, 245 Ill. App. 3d at 328.

The *GTE North* court based its finding that the contract did not contain an agreement to obtain insurance for the owner on the fact that, in cases in which courts have found such agreements, the contracts have expressly required that the promisee be named an insured on the policy or be directly covered by the policy. (*GTE North*, 245 Ill. App. 3d at 326, citing *Jokich v. Union Oil Co.* (1991), 214 Ill.

App. 3d 906, 574 N.E.2d 214; *St. John v. City of Naperville* (1987), 155 Ill. App. 3d 919, 508 N.E.2d 1128; *Bosio v. Branigar Organization, Inc.* (1987), 154 Ill. App. 3d 611, 506 N.E.2d 996; *Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 427 N.E.2d 189.) There was no such express requirement in the language of the contract before the *GTE North* court.

A comparison of the language in the *GTE North* contract to the language in the contract in the case before us leads to the conclusion that Mohawk did not make a valid agreement to obtain insurance for Kennedy. First, like the indemnification provision in the *GTE North* contract, the indemnification provision in section 18 of the Mohawk-Kennedy contract was void under the Indemnification Act as an agreement by Mohawk to personally indemnify Kennedy for its own negligence.

Second, the portion of the contract in which Mohawk agreed to purchase insurance to insure its obligations under section 18 is also void because, like the insurance provision in *GTE North*, it is inextricably tied to the void indemnity provision.

Finally, there was no agreement to obtain insurance other than the void agreement by Mohawk to insure its obligations under the indemnity provision. In examining insurance provisions almost identical to the one in the Mohawk-Kennedy contract, the *GTE North* court found no valid agreement to obtain insurance. As in *GTE North*, there was no express requirement in the contract in this case that Kennedy be named an insured under Mohawk's insurance policies or that the insurance Mohawk furnished would cover Kennedy's (as opposed to only Mohawk's) liability.

Like the *GTE North* court, we must conclude that the contract between Mohawk and Kennedy did not contain a valid agreement by Mohawk to obtain insurance for Kennedy. Instead, the contract contained only a void agreement by Mohawk to insure its obligations under section 18. (See also *Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 363, 484 N.E.2d 542 (holding that there was no valid agreement to obtain insurance under the following language: "Subcontractor shall maintain insurance in the following limits and cause a so-called contractual liability and/or hold harmless endorsement to be issued by the insurance company or companies insuring all the Subcontractor[']s indemnity obligations under this agreement ***").) The plaintiff argues that this provision was merely voidable rather than void but cites no support for this claim. In addition, this assertion is contrary to the numerous decisions holding that provisions that violate the Indemnification Act are void. See, *e.g., Juretic v. USX Corp.* (1992), 232 Ill. App. 3d 131, 596 N.E.2d 810.

The cases the plaintiff cites are distinguishable from the case before us. In one of the cases the plaintiff cites, *Zettel*, the court specifically held that it would not decide whether the contract required the subcontractor to obtain insurance to cover a joint venture's liability because the subcontractor did not raise this issue on appeal. *Zettel*, 100 Ill. App. 3d at 616.

Another case the plaintiff cites, *Coverdill*, is also distinguishable. The court in that case decided that the subcontractor's agreement to insure its obligations under an indemnity provision was not void. (*Coverdill*, 146 Ill. App. 3d at 115.) The court based its decision on the fact that the indemnity provision in *Coverdill* specifically provided that the subcontractor did not agree to indemnify the contractor for the contractor's own negligence. It was, therefore, not void under the Indemnification Act, which prohibits agreements to indemnify another for that other's own negligence. (*Coverdill*, 146 Ill. App. 3d at 115.) The indemnification provision in the Mohawk-Kennedy contract, by contrast, did not contain a limitation such that the Indemnification Act would not apply to invalidate Mohawk's agreement to insure its obligations under that provision.

The other cases the plaintiff cites are distinguishable on the basis that the construction contracts in them contained an express requirement that the promisee be named an additional insured on the procured insurance or an express requirement that the insurance cover the promisee's liability directly. In *Bosio*, for example, the court found that there was a valid agreement by a contractor to procure insurance for an owner, despite the fact that the contract also contained a void indemnity provision. The court found this valid agreement in the following language:

> "The CONTRACTOR *shall furnish public liability insurance* in the principal sum of $100,000.00 to $300,000.00 with insurance carrier thereon satisfactory to the OWNER, *indemnifying and saving harmless the OWNER* from any and all personal injury claims arising thereunder by reason of the performance of this contract." (Emphasis added.) (*Bosio*, 154 Ill. App. 3d at 612.)

In *St. John*, the contractor was required to "*provide all insurance necessary to protect* and save harmless the property, *the Owner* and his representatives and the Contractor." (Emphasis added.) (*St. John*, 155 Ill. App. 3d at 921.) Unlike the contracts in *Bosio* and *St. John*, the contract between Mohawk and Kennedy did not contain an express requirement that the insurance Mohawk furnished cover Kennedy.

Like *Bosio* and *St. John*, other cases in which courts have found valid agreements to insure involved contracts with express require-

ments that the promisee be a named insured under the policy or that the policy cover the promisee's liability. In *Juretic v. USX Corp.* (1992), 232 Ill. App. 3d 131, 596 N.E.2d 810, for example, the court found a valid agreement to obtain insurance in language that required the contractor to obtain insurance coverage "insuring \*\*\* Contractor's *and Owner's liability* to pay for any bodily injuries" and "for any and all loss, damage and injury to the property of any and all persons in any manner caused by \*\*\* Contractor's performance of the work." (Emphasis added.) (*Juretic*, 232 Ill. App. 3d at 133.) The court reasoned that this language covered "matters other than the obligations under the void indemnity provision" because it required the Owner to be named as an additional insured on the insurance obtained. *Juretic*, 232 Ill. App. 3d at 135. See also *Duffy v. Poulos Brothers Construction Co.* (1991), 225 Ill. App. 3d 38, 40, 587 N.E.2d 1038 ("*The Owner, its officers, agents and employees shall be named as additional insureds on all insurance policies required to be purchased by the Contractor or a Subcontractor.* A certificate of insurance, indicating the Owner, its officers, agents and employees as co-insureds shall be filed with the Owner, by the Contractor, for each insurance policy required to be purchased by the Contractor or a Subcontractor" (emphasis added)); *Jokich*, 214 Ill. App. 3d at 908 ("With respect to the operations performed under or incident to this Agreement, [J&V] further agrees to obtain and maintain insurance acceptable to [Union Oil] which is primary as to any other existing, valid and collectible insurance and except for workers' compensation, employer's liability and contractual liability *names [Union Oil] as an additional insured* \*\*\*" (emphasis added)).

As "corroboration" for its argument that Kennedy was an additional insured under the defendant's policy, the plaintiff urges us to consider an insurance certificate dated July 26, 1991; the deposition testimony of Robert Schauer, the president of Mohawk; and the deposition testimony of Robert Franz, the producer of the defendant's policy. If, however, an instrument contains "no ambiguity, the meaning of the instrument and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Simmons v. Blauw* (1994), 263 Ill. App. 3d 829, 832, 635 N.E.2d 601.

In this case, we will not consider the plaintiff's parol evidence because there is no ambiguity relevant to the issue on appeal in either the construction contract or the defendant's policy. There was no enforceable language in the construction contract that required Mohawk to provide insurance for Kennedy, and, therefore, Kennedy

was not an additional insured according to the plain terms of the blanket additional insured endorsement.

We hold that Kennedy was not an additional insured under the defendant's policy and affirm the judge's ruling that the defendant had no duty to indemnify the plaintiff for the settlement of the Sykes suit.

■ We now address the cross-appeal by the defendant. The defendant argues that, in addition to having no duty to indemnify the plaintiff, it also had no duty to provide Kennedy with a defense in the Sykes suit.

The plaintiff relies on the general rule that an insurer is obligated to defend if a complaint contains allegations potentially within the coverage of the policy, and the insurer may not refuse to defend unless it is clear from the face of the complaint that it does not fall within the coverage of the policy. (*Dixon Distributing Co. v. Hanover Insurance Co.* (1994), 161 Ill. 2d 433, 641 N.E.2d 395; *Bituminous Casualty Corp. v. Fulkerson* (1991), 212 Ill. App. 3d 556, 571 N.E.2d 256.) The plaintiff correctly points out that the duty to defend under a policy is broader than the duty to indemnify. But implicit in all the cases upholding the duty to defend is the requirement that the complaint allege facts at least potentially within policy coverage. It necessarily follows that there can be no potential coverage if the plaintiff is not an insured.

A court may look beyond the allegations of a complaint if the coverage issue involves the question of whether the party asserting coverage is a proper insured under the policy. (*Bituminous*, 212 Ill. App. 3d at 562, citing *State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 531 N.E.2d 913.) We have determined that the plaintiff was not an insured under the policy. Therefore, there is no coverage, potential or otherwise, and there is no duty to defend. (See *Shapiro v. DiGuilio* (1968), 95 Ill. App. 2d 184, 237 N.E.2d 771.) We judge that the order requiring the defendant to reimburse the plaintiff for sums it had expended in defending Kennedy was incorrect.

For these reasons we affirm that part of the judge's order in which he ruled that the defendant had no duty to indemnify the plaintiff, but we reverse that part of his order in which he ruled that the defendant had a duty to defend Kennedy in the Sykes litigation and must reimburse the plaintiff for its reasonable defense costs. In light of our holding that the defendant had no duty to indemnify or defend, it is unnecessary for us to address the plaintiff's arguments regarding

estoppel, subrogation and primary insurance or the defendant's argument that it is not liable for an amount in excess of its policy limits.

Affirmed in part and reversed in part.

ZWICK, P.J., and McNAMARA, J., concur.